PLANTERS' MUTUAL INSURANCE ASSOCIATION OF ARKANSAS *v.*
DEWBERRY.

Opinion delivered May 4, 1901.

1. FIRE INSURANCE—DEATH OF INSURED—EFFECT.—Where a policy of
fire insurance provided that a change of title or possession of the
insured property should avoid the policy, the death of the policy
holder and the descent of the property to his wife and children
was not such a change as would avoid the policy. (Page 300.)

2. CHANGE OF POSSESSION—LEASE.—Where a fire insurance policy
provided that a change of possession of the insured property should
avoid the policy, and the wife of the insured, on his death, leased
the property to tenants without the insurer's consent, there was
such a change of possession as would avoid the policy. (Page 300.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

Action by Clara A. Dewberry, administratrix of R. A. Dew-
berry, deceased, against the Planters' Mutual Insurance Associa-
tion. From a judgment for plaintiff, defendant has appealed.
The facts are stated in the opinion of the court as follows:

The appellee brought this suit in the court below as the
administratrix of the estate of R. A. Dewberry, deceased, upon
an insurance policy executed to R. A. Dewberry in his lifetime
for a loss which occurred after the said R. A. Dewberry died, and
she alleged in substance: That she was the widow of R. A. Dew-
berry, deceased, who departed this life on the 25th day of July,
1898, and that on the 21st day of March, 1899, she was appointed
by the probate court of Lee county as administratrix of his estate;
that the said R. A. Dewberry, at the date of his death, was the
owner in fee of the real estate upon which the insured property
was located; that on the 31st day of March, 1896, the defendant,
in consideration of the payment of a premium of $78, executed its
policy of insurance to said R. A. Dewberry, which is attached to
the complaint; on the 21st day of February, 1899, said dwelling
house was totally destroyed by fire; on the 22d day of March,
1899, the plaintiff, her said husband having previously died, fur-

nished the defendant with proof of her loss, as such administratrix, and she brings this suit to recover said loss.

To which the appellant, the defendant in the court below, filed, in substance, the following answer: It admits that on the 31st day of March, 1896, it executed its policy of insurance in writing, whereby it insured the said dwelling house against loss by fire in the sum of $750 for a term of three years; that it is true that the plaintiff, on or about the 22d day of March, 1899, as administratrix as aforesaid, furnished the defendant with the so-called proof of loss, as such administratrix, but in said proof it appeared that at the time of loss it was not occupied by the assured or by his family, but by a stranger to the contract, and it denies that the plaintiff has performed all the conditions in said policy contained. It denies that the plaintiff was entitled to recover the sum of $750, and for further defense it says that in said contract of insurance there is the following clause, to-wit: "If there is, or shall be, other prior, concurrent or subsequent insurance (whether valid or not) on said property, or any part thereof, without the association's written consent, or if said building now is, or shall become, vacant or unoccupied; or if the hazards shall become increased in any way, whether under the control and knowledge of the member or not; or if the property, or any part thereof, shall be sold or conveyed, or if the property insured now is, or shall become, incumbered by mortgage or otherwise, or any change takes place in the title, occupation or possession thereof whatever, or if the interest of the member in said property, or any part thereof, now is, or shall become, any other or less than a perfect legal and equitable title and ownership, free from all liens whatever, except as stated in writing thereon, or if the buildings, either of them, stand on leased ground, or land of which the assured has not a perfect title; or if his contract shall be assigned without the association's written consent hereon,—then, and in every such case, this contract shall be absolutely null and void." That said clause in said policy is a part and parcel of the contract, and the said contract of insurance has been violated as follows: First. That said property became vacant or unoccupied without the consent of this defendant after the execution of said policy. Second. That the hazard and risk which the defendant originally undertook was increased by placing a tenant in possession of the property, which was done without the consent of the defendant. Third. Because there was a change in the occupation or possession of the premises

and house alleged to be burned, after the execution of the policy sued on. Fourth. That at the time of the alleged fire neither the said deceased nor his family were in possession or occupancy of the same, but said property was occupied by and in possession of another, who had no connection with this contract whatever. All these causes of defense occurred without the knowledge or consent of this defendant, and by reason thereof the said policy is void. Fifth. Because there was a change in title to the property alleged to be burned between the date of the execution of the policy sued on and the date of the alleged loss, said change of title being caused by the death of the assured before the date of the loss complained of. The defendant further states that in the application of insurance made by the said R. A. Dewberry the question was asked him if the dwelling was occupied by himself or by a tenant. He answered that it was occupied by himself as a private dwelling, and the defendant states that any change of possession or occupancy in any way whatever vitiated and annulled said policy, and the defendant says the plaintiff is not entitled to sue as administratrix herein. It therefore states that it is not liable to the plaintiff in any sum whatever.

The plaintiff demurred to the fifth paragraph of the defendant's answer, which was sustained by the court, and the defendant excepted to the ruling of the court, and the same was made a cause for a new trial.

The following evidence was adduced at the trial: The policy of insurance was introduced, in which will be found the clause which is quoted in the answer as above stated.

Mrs. Clara A. Dewberry testified as follows: "I am the widow of R. A. Dewberry. At the time of his death he was living in the house covered by this insurance. He had lived there five years up to the date of his death. The house insured has been entirely destroyed by fire. It was burned on the 21st of February, 1899. At the time of the fire, I was living at my father's, D. E. Holland. It was about two miles from the property insured. Mr. R. A. Dewberry died on the 24th day of July, 1898. I moved from my husband's home back to my father's two weeks before last Christmas. From the time I left until the house was destroyed by fire, it was occupied by Woodford Haile, a colored man, a good, reliable man. I left home because I had no one to protect me. My brother was with me, and my two little children, the oldest one three years old, the other sixteen months. My brother was

not a member of the family." Cross-Examination.—"I do not know how many persons Woodford Haile has in his family. Do not know whether he has eleven members or not. He has a tolerable good-sized family. Woodford Haile took charge of the house as soon as I left it. I had gone when he took possession; that is, when he went in. He moved in the night after I left in the morning. I did not see him move in. I did not see him there the next morning. I was not there when he moved in, but I know he moved in directly after I moved out. I know he would not tell me a story."

Here the defendant exhibited a contract executed by Mrs. Clara A. Dewberry and Woodford Haile, which said contract was dated the 2d day of January, 1889, and shows a lease of the property by Mrs. Dewberry to Woodford Haile for a period of one year; that is, the real estate upon which the property destroyed by fire was located.

Here the defendant introduced the application made by R. A. Dewberry in his lifetime, in which the following question is asked and answered, as follows:

"Is it (that is, the house insured) occupied by applicant or tenant?

"A. Applicant, as a private dwelling."

Here the defendant introduced the proof of loss. In said proof of loss is the following, to-wit: "That the building insured was occupied in its several parts by the parties hereinafter named for the following purposes, to-wit: By Woodford Haile and family as a residence, and for no other purpose whatever." Woodford Haile was in the possession of the house at the time it was burned. He had been in possession from the time he took possession until it was burned.

The defendant introduced the following testimony: Woodford Haile, a colored man, being duly sworn, testified as follows: "I am the party who was in possession of the property at the time it was destroyed by fire. I have about eleven members in my family. I am one, my mother-in-law and her daughter, my two grand-daughters, and I have five little children; that is, the children are from three and four up to twenty. Three of them are under fifteen. My mother-in-law lives with me, and she has a daughter. There were four sleeping rooms in the house with the one upstairs, but my family only occupied three."

There was testimony tending to prove that Woodford Haile was a reliable and careful colored man.   There was also testimony tending to show that insurance companies as a rule would not insure property occupied by colored people in a sum exceeding $500.

Defendant asked the following instructions, to-wit:   "(1) The jury are instructed that if they find from the evidence that the policy of insurance sued on was executed to R. A. Dewberry, and that the said Dewberry departed this life after the execution of the same, and before the fire which occasioned the loss complained of, then, under the terms of the policy, there was a change of title to the property, and the plaintiff cannot recover, and your verdict must be for the defendant.   (2) The jury are instructed that if they find from the evidence that at the time the policy of insurance sued on was executed the premises insured belonged to R. A. Dewberry, and were occupied by him as a residence, and that, before the loss complained of, the said Dewberry departed this life, and his wife, Clara Dewberry, rented the property to Woodford Haile, and at the time of the loss the said Haile occupied said property as a tenant of the plaintiff, this would constitute a change of possession under the terms of the policy, and the plaintiff cannot recover, and your verdict should be for the defendant.   (3) The jury are instructed that if they believe from the evidence that the policy of insurance sued on was executed to R. A. Dewberry, and that afterwards said Dewberry departed this life, and the plaintiff was a white woman with only three children, and that she rented the property insured to Woodford Haile, a colored man with a large family, consisting of eleven members, including himself and ten others, consisting of women and small children, then, under the terms of the contract sued on, there was a change of occupancy, and the plaintiff cannot recover."   The court refused to give these three instructions.

*J. W. House,* for appellant.

It was error to refuse to instruct the jury that the leasing and occupancy of the property thereunder constituted such a change in possession as would avoid the policy.   51 Me. 110; 30 Pa. St. 311; 18 Mo. 128.   The death of the assured made a sufficient change in the title to avoid the policy.   Ostrander, Fire Ins. 239, 240, 241; 73 N. Y. 449; 54 Ill. App. 55; 93 N. Y. 75; 58 Barb. 335.

*Quarles & Moore* and *McCulloch & McCulloch*, for appellee.

The death of the assured did not operate, *ipso facto,* as a forfeiture of the policy.    89 Ky. 551; 24 N. H. 550; 182 Ill. 39; 28 Gratt. 88.    In continuing the stipulations of a policy, that construction is to be given, if possible, which will avoid forfeiture. 100 Wis. 118; 104 Ga. 67; 124 N. C. 315; 112 Mich. 425; 121 Cal. 458; 97 Ia. 226; 160 Ill. 642; 38 Minn. 501; 68 Tex. 144; 67 Ark. 553; 54 Ark. 376; 154 N. Y. 449.    The statement in the application that the possession was in the assured did not constitute a warranty that it would so continue.    83 Ky. 468; 58 Pa. St. 419; 1 Sumn. 345; 45 Me. 168; 48 Me. 558; 71 N. Y. 508.    There was no such change of occupancy as to avoid the policy.    61 Ark. 108; 34 S. W. 393; 45 L. R. A. 204; 46 N. Y. 526; 98 Ky. 305; 52 Ark. 257.

HUGHES, J., (after stating the facts).    While there is a conflict in the decided cases upon the question involved in the first instruction,—that is, that the title to the property was changed by the death of R. A. Dewberry after the execution of the policy and the descent of the property insured to his wife and children,—we incline to the opinion that the more reasonable view is that the title to the property was not changed by the death of R. A. Dewberry and the succession of his wife and children to his rights therein, within the meaning of the policy.    We think this view amply supported by the decisions.    *Richardson* v. *German Ins. Co.,* 89 Ky. 571; *Burbank* v. *Rockingham,* 24 N. H. 550; *Forrest City Ins. Co.* v. *Hardesty,* 182 Ill. 39; *Georgia Home Ins. Co.* v. *Kinnier,* 28 Grat. 88.

We are of the opinion that the court committed reversible error in refusing to give instructions two and three asked by the defendant, which were to the effect that renting the property to Woodford Haile for twelve months and its occupancy by him at the time of the loss constituted a change of possession under the policy.    The house destroyed was occupied by Mrs. Clara A. Dewberry at and after the death of her husband, until she rented the property to Woodford Haile, and gave him possession thereof, and moved away from the premises, and thereafter, until the house was consumed by fire, it was in the possession of Woodford Haile, and occupied exclusively by himself and family consisting of nine others.    If this was not a change of possession and occupancy, it is difficult to determine what would be.    The parties to

the insurance policy made their contract, and stipulated that there should be no change in the possession or occupancy of the property without the consent of the insurance company.   The change of possession and occupancy was made without the consent of the insurance company, and continued to the time the house was consumed by fire.   This was a violation of an express provision of the terms of the policy, the contract between the company and R. A. Dewberry, the insured, and avoids the policy according to its stipulations.

"Where the policy provides that it shall be void if any change takes place in the interest, title or possession of the subject of insurance, such provision has reference to change subsequent to the time of effecting the insurance.   Leasing the property and surrendering possession to the lessee is a change in the possession.   If the policy is conditioned to be void in case any change takes place in the interest, title or possession of the subject of insurance, whether by legal process or judgment, or by voluntary act of the insured, or otherwise, an assignment for the benefit of the creditor will avoid the policy."   3 Joyce, Ins. § 2238.

In *Wenzel* v. *Commercial Ins. Co.,* 67 Cal. 440, the court said: "Another point made by the appellant is that the condition of the policy in regard to a change in possession of the property was broken by the insured.   In the ninth finding it is found by the court as a fact in the case that on the 17th day of January, 1882, the plaintiff and others, without the consent of the defendant, leased the property insured, and surrendered the possession thereof to James Hoskins and his associates.   This was a breach of condition in the policy which rendered the same void according to the express language thereof."   *Hartford Fire Ins. Co.* v. *Ross,* 23 Ind. 180; *Germania Fire Ins. Co.* v. *Home Ins. Co.,* 144 N. Y. 195.

For the error indicated the judgment is reversed, and the cause is remanded for a new trial.