QUEEN OF ARKANSAS INSURANCE COMPANY *v.* PENDOLA.

Opinion delivered March 21, 1910.

FIRE INSURANCE—CHANGE OF POSSESSION OF PROPERTY INSURED.—Where a policy insuring personal property against loss by fire stipulated that the policy shall be void if any change takes place in its possession, the policy is avoided by a lease of the property, together with a change of possession, executed without the insurer's consent.

Appeal from Pulaski Circuit Court; *James H. Stevenson,* Judge; reversed.

*J. W. & M. House,* for appellant.

Appellant is not liable because of repeated changes in the possession of the property insured, contrary to the terms of the policy, such changes being without appellant's knowledge and consent. An insurance company does not waive any forfeiture of anything of which it had no knowledge. 67 Ark. 588; 3 Cooley's Brief on Ins. 2467. The stipulation against changes in possession of the insured property was to guard against just such occurrences as happened in this case, *i. e.,* the property of the tenant in possession was saved, but the insured property

was left to burn.   69 Ark. 295; 58 N. E. 314; 36 Am. St. Rep. 905.

*J. W. Blackwood,* for appellee.

A change of tenants does not vitiate the policy where the property continues, as in this case, to be used for the same general purposes, *i. e.,* hotel purposes.   72 N. Y. 118; 18 Hun (N. Y.) 525; 58 Pa. 419; 8 R. I. 282; 1 Fed. 398; 2 Fed. 431; 2 Rob. (La.) 270; 114 Ia. 153.

BATTLE, J.   This was an action by Tony Pendola against Queen of Arkansas Insurance Company on a policy of insurance of certain personal property against fire.   In the policy was contained a stipulation in words as follows:

"If the property, or any part thereof, shall be sold or conveyed; or if the property now is, or shall become, incumbered by mortgage or otherwise; or if any change takes place in the title, use, occupation or possession thereof whatever, either by the death of the assured or otherwise; or if the interest of the assured in said property, or any part thereof, now is or shall become any other or less than perfect legal and equitable title and ownership, free from liens whatever, then and in each such case said policy shall be and become absolutely null and void."

Among the defenses pleaded by the defendant, it answered substantially as follows:

"That, prior to the burning of the property covered by insurance, the plaintiff conveyed and sold said property to Joe Cascio, who took possession of same without the knowledge and consent of the defendant company, and the policy thereby became null and void.   That afterward Joe Cascio rented said property to Frank Mars, who took possession of same and continued to occupy the hotel for some weeks, in which the property was located, without the knowledge and consent of the defendant, and by reason thereof the policy became null and void.

"That prior to the alleged loss the said Frank Mars rented said property to one Claire Pearl Newton, and turned the possession and occupancy over to her, and she continued to occupy the hotel, and remained in possession of the property covered by insurance to the date of the fire, and that by reason of change

in occupancy, title and possession the policy became absolutely null and void."

The hotel in which the property insured was located at the time the policy was executed belonged to Joe Cascio. The defendant received a letter from plaintiff, informing it that he had sold the property to Cascio. Thereafter Cascio hired and delivered it to Frank Mars, and he held it for a short time, and then hired and delivered it to Claire Pearl Newton, and she held it until it was destroyed by fire. Defendant had no notice of the hire or change of the possession of the property from Cascio to Mars, or from Mars to Newton until after the fire.

The hotel in which the property insured and used was destroyed by fire on the 27th day of July, 1905. Some of the furniture in the hotel was saved, but all the property insured was consumed by fire. The reason given for not saving it was that there was not time to save all.

The plaintiff recovered judgment, and the defendant appealed.

The transfer of the property insured from Cascio to Mars and from Mars to Newton, without the consent of the defendant, avoided the policy. *Planters' Mutual Ins. Association of Arkansas* v. *Dewberry,* 69 Ark. 295.

An insurance company has the right to determine what property it will insure, and to make its liability for such insurance dependent on the occupant. This is a matter of contract. The insured has the right to determine what insurance he will accept; and when he enters into a contract with the insurance company in which the property insured is specified, and the insurance is made to depend upon the change of occupancy, he is bound by the contract, and he cannot change the occupancy of the property contrary to the terms of the policy and hold the insurer liable. He cannot change the contract. This is necessary for the protection of the insurer.

The transfer by plaintiff of the possession of property to Cascio by permission of the defendant did not authorize the transfer or change of possession to other persons. Cascio was the owner of the hotel in which the property insured was used, and was personally interested in protecting the property against fire. In so doing he was protecting his own. This may have been the inducement to permit the change to him. If it had

known of the subsequent changes, there was no such induce-
ment to consent to them. The consent to the change of pos-
session from one to another does not authorize subsequent
changes. This would impair the protection such a stipulation
was designed to secure, in depriving the insurer of the security
it has in deciding in whose hands the property shall stand
insured, for it is well known that the security of property de-
pends much upon the character of the occupant. We are speak-
ing now of changes of care, custody and control, and not of
those changes which substitutes one servant for another, and
does not affect the actual control of and interest in the prop-
erty. Further than this it is unnecessary to go.

In *Hartford Fire Insurancee Co.* v. *Ross,* 23 Ind. 179, the
court, in speaking upon this subject, said: "The object of the
condition in the policy of insurance is evident. Each party to
the contract is interested in knowing with whom the engage-
ment is made. The insured looks to the reputation for respon-
sibility, promptness and fairness of the corporation. The in-
surer looks, with an interest as earnest, to the integrity and
business capacity of the insured—to the motive prompting the
insurance. To them the contract is peculiarly a personal one;
and the condition of the contract is that the persons with whom
they enter into it shall remain the same. When the instrument
was executed, they depended upon a certain amount of cau-
tion, skill and forethought in the care of the property, and they
perhaps relied upon the moral honesty of some one or all of
the insured to resist, in the future, any temptation to permit
the destruction of the property, should it prove an unprofitable
investment. Any change of interest may prove destructive of
the prime motive for the contract. The introduction of a new
partner may also introduce a dangerous element; the retire-
ment of one member of the firm, or of one owner in the prop-
erty, may withdraw also the personal integrity or the skilful
care that induced the insurance."

In *Germania Fire Insurance Co.* v. *Home Insurance Co.,*
144 N. Y. 195, 199, the court said:

"We think it perfectly clear on principle that the sale
of an interest in the insured property by Verdier Brown and
the formation of a copartnership between the two rendered the
policy void.

"The contract of insurance is peculiarly personal in its nature, and the success of the business of underwriting depends laregly upon what is known as the moral hazard.

"It is a well-established principle of the common law that every man has the right to determine with whom he will enter into contract obligations.

"An insurance company is induced to issue or withhold its policy after carefully scrutinizing the character of the applicant for insurance.

"It is of the utmost importance to the company to ascertain who is to be vested with the title and possession of the property sought to be insured.

"It would be a harsh and indefensible rule that required the underwriter, who had insured an individual on a stock of goods in a store, to continue the insurance after the insured had taken in two partners, and formed a firm wherein each partner was vested with an undivided one-third interest in the property covered by the policy, without having been afforded the opportunity to examine into the moral and business characters of two strangers to the original contract."

The undisputed evidence in the case shows that the possession of the property was changed without the consent of the defendant, or its knowledge until after the fire, and that the policy is void according to its own terms.

The judgment of the court is reversed and the action is dismissed.

McCULLOCH, C. J., (dissenting). Plaintiff testified that he informed the defendant by letter of the fact that he had rented the property to Cascio, and that thereafter the company accepted payment of premium notes without objections to the change of possession. The company is therefore estopped to claim a forfeiture on account of that change, and the policy should be treated as one on property owned by plaintiff in the possession of Cascio, his bailee. When personal property is insured in the possession of a bailee of the assured, a change of possession from one bailee to another of the same kind is not such a change in the "use, occupation or possession" as avoids the policy. *Smith* v. *Phoenix Ins. Co.,* 91 Cal. 323; *Farmers' Fire Ins. Co.* v. *Baker,* 94 Md. 545; *Thompson* v. *Phoenix Ins. Co.,* 136 U. S. 287.

The Indiana case relied on in the opinion of the majority was one where the *interest* of the assured in the property had been changed by the retirement of one partner from the firm. That presents an altogether different question from the one in this case.  The Dewberry case (*Planters' Mut. Ins. Assoc.* v. *Dewberry,* 69 Ark. 295) was also different in that there was an entire change in the character of the occupancy from that of the owner as a dwelling place to that of a tenant.  Here the change was only from one bailee to another.

It seems to me that the conclusion of the majority entirely ignores and fails to give any force to our statute which provides that "substantial compliance with the terms, conditions and warranties of such policy, upon the part of the assured, * * * shall be deemed sufficient and entitle the plaintiff to recover in any such action."  Kirby's Dig., § 4375a.

I cannot imagine a state of case to which this statute would more fitly apply than to the present one where there has been merely a change of possession from one bailee to another, no increase of risk being shown.  If this statute had been in force at the time the loss occurred in the Dewberry case, it should have changed the result in that case.

FRAUENTHAL, J., concurs in the dissent.