## NATIONAL BEN FRANKLIN FIRE INS. CO. OF PITTSBURGH, PA., v. THE PRAETORIANS.

### No. 2932.

Court of Civil Appeals of Texas. El Paso.

Jan. 4, 1934.

Rehearing Denied Jan. 25, 1934.

R. W. Mayo and Smithdeal, Shook, Spence & Bowyer, all of Dallas, for plaintiff in error.

J. W. Randall and T. W. Davidson, both of Dallas, for defendant in error.

PELPHREY, Chief Justice.

This suit was disposed of upon an agreed case, but we shall not here state the case as agreed. The following statement, we think, will suffice:

Defendant in error loaned B. E. Houghton in the neighborhood of $48,000, for which he executed notes payable to defendant in error and to secure which he executed a first lien on certain property.

Houghton, then in compliance with his contract with The Praetorians, insured the property with plaintiff in error, the interest of The Praetorians being insured to the extent of $30,000.

The policy contained the following clause: "On payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment, be subrogated to the Mortgagee's (or trustee's) right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's (or trustee's) right to sue, or it may pay the mortgage debt and require an assignment thereof and of the mortgage."

The property was later damaged by fire to the extent of $15,500. Plaintiff in error denied liability to Houghton and paid defendant in error the $15,500. Later defendant in error had the property sold under the deed of trust and bid the property in for $30,000. This sum, together with the amount received from plaintiff in error, was insufficient to satisfy the debt due defendant in error by Houghton.

Plaintiff in error filed this suit contending that under the above-quoted mortgage form it was subrogated to the rights of defendant in error under the mortgage and entitled to a foreclosure against the property in satisfaction of the amount paid by it to defendant in error by virtue of the mortgage clause; that in the alternative it was entitled to have the property now sold as under foreclosure and to have the proceeds prorated in the proportion that $16,094.16 bears to $48,197.11; or, in the further alternative, that it have a decree establishing that it has an interest of 16094.16/48197.11 in the property itself.

Defendant in error took the position, in answer to the claim of plaintiff in error, that plaintiff in error was not entitled to enforce the provisions of the subrogation clause in the mortgage form against Houghton to the detriment of defendant in error, nor until defendant in error had collected the entire amount of its debt.

334

The trial court in construing the clause in question concluded as follows: "It is the opinion of the court that such clause, in the light of the agreed statement of facts, does not entitle the plaintiff to be subrogated, or in any manner substituted for The Praetorians, in the absence of a showing that The Praetorians' debt has been satisfied."

From a judgment that plaintiff in error take nothing this writ of error has been perfected.

Article 4931, Revised Statutes, reads: "The interest of a mortgagee or trustee under any fire insurance contract hereafter issued covering any property situated in this State shall not be invalidated by any act of neglect of the mortgagor or owner of said described property or the happening of any condition beyond his control, and any stipulation in any contract in conflict herewith shall be null and void."

The policy here in question contained the following provision: "This policy as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property. * * * *"

Defendant in error takes the position that to give to the subrogation clause the construction contended for by plaintiff in error would circumvent and evade the intent and purpose of the mortgage clause of the policy as well as the statute above quoted.

With this contention we must agree. The Supreme Court, in Camden Fire Insurance Ass'n v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W.(2d) 1029, 1030, in discussing the effect of mortgage clauses in fire insurance policies, said: "The effect of this clause, when attached to a policy, is to make a new and independent contract between the mortgagee and the insurer, and to effect a separate insurance on the mortgagee's interest."

As to the right of subrogation as between the insurer and the mortgagee, we find the following statements by authors of insurance law:

Couch, in volume 8, § 2006b, pp. 6623 to 6678, says: "A great many policies of insurance upon property contain the socalled union or standard mortgage clause, whereby the loss is made payable to the mortgagee as his interest may appear, and it is provided that, as between the insurer and the mortgagor or owner, the insurer, upon payment of a loss to the mortgagee, and if it shall claim that no liability exists as to the mortgagor, shall be subrogated to the mortgagee's right of recovery and claim against the mortgagor. * * * But it also is held that even where the mortgage clause entitled the insurer to be subrogated to the rights of the mortgagee against the mortgagor, on payment of the loss, the insurer cannot demand a surrender of the mortgage until it has tendered the mortgagee the full amount of the debt. And the insurer is not entitled to subrogation, where the policy was avoided as to the mortgagor, and a loss was paid to the mortgagee, unless the whole amount of the mortgage debt was paid with the proceeds of the policy, a part payment being insufficient to invoke the insurer's right of subrogation. * * * It also is held that, where the policy provides for subrogation upon payment to the mortgagee, an agreement by the mortgagee, at the time of receiving payment, to assign to the insurer an equal portion of the mortgage debt, is without consideration."

Again in section 2006c, he says: "Primarily, and in the absence of an agreement therefor, an insurer which has paid a loss to a mortgagee is not entitled to be subrogated to the mortgage debt while any part of it remains unpaid; in other words, the insurer is not entitled to subrogation if any part of the debt is unpaid, unless it tenders to the mortgagee the balance due."

In Cooley's Briefs on Insurance, vol. 7, p. 6725, it is said: "The insurer is not entitled to be subrogated to the insured mortgagee's security, unless it pays him the whole of the mortgage debt. * * * The payment of only a portion of the debt to an insured mortgagee does not entitle the insurer to subrogation to a proportionate amount of the security. The right of the mortgagee to fully collect the debt must take precedence of the right of subrogation, leaving in the insurer only a right to any surplus realized on the securities beyond the debt as reduced by the payment of the insurances."

In section 3565 of Joyce on Insurance, p. 5909, we find the rule stated thus: "An insurer who has paid a loss to a mortgagee is not entitled to be subrogated to the mortgage debt while any part of it remains unpaid. In other words, the insurer is not entitled to subrogation, if any part of the debt is unpaid, unless he tenders to the mortgagee the balance due."

Plaintiff in error has quoted extensively from the opinion of Judge Leddy in British American Assur. Co. v. Mid-Continent Life Ins. Co. (Tex. Com. App.) 37 S.W.(2d) 742, 745, and while there are some expressions in that opinion which, taken alone, might tend to support the contention of plaintiff in error, yet we find in the judgment the following recital: "In favor of the Mid-Continent Life Insurance Company against the British American Assurance Company of Toronto, Canada, for the sum of $4,000, with interest thereon at the rate of 6 per cent. per annum from October 18, 1927; that the Mid-Continent Life Insurance Company take nothing as against the Continental Insurance Company of New York, and said company recover its costs in all courts; that a lien be decreed to exist in favor of the British Ameri-

can Assurance Company of Toronto, Canada, against the property belonging to A. A. Maupin, covered by the mortgage held by the Mid-Continent Life Insurance Company, to secure the payment of the sum herein awarded, against said company, and that said lien be foreclosed against A. A. Maupin, and said property ordered sold as under execution, such sale being subject to the lien held by the Mid-Continent Life Insurance Company for any indebtedness remaining under its mortgage after the application of the amount herein awarded."

The court in that case was construing the identical clause here under consideration and, we think, by rendering the above judgment, clearly recognized the principle applied by the trial court in the disposition of this case.

The judgment of the trial court is in all things affirmed.