**MFA MUTUAL INSURANCE COMPANY,**
**Plaintiff-Appellant,**

v.

**Ben HUDDLESTON and Mildred Huddleston, Defendants-Respondents.**

**No. 25361.**

Kansas City Court of Appeals,
Missouri.

Oct. 5, 1970.

Jay Nigro, Popham, Popham, Conway, Sweeny & Fremont, Kansas City, for plaintiff-appellant.

Sol M. Yarowsky, Kansas City, for defendants-respondents.

FLOYD L. SPERRY, Special Commissioner.

This is an action by appellant MFA Mutual Insurance Company against defendants whom it insured as owners of a farm dwelling, arising from appellant's partial payment of a fire loss to the Veterans Administration as mortgagee under the mortgage clause of its policy. Appellant contends defendants' rights under the policy were "suspended" when they obtained additional insurance on the dwelling without the written permission of appellant and that defendants thereby became obligated to reimburse the appellant under the subrogation provisions of the policy for $6,200.00 it paid to the mortgagee.

The parties will be referred to as they were designated in the trial court. The facts are not disputed and disclosed that defendants purchased the farm property near Harrisonville in January, 1964, which they financed with a veteran's loan of $15,-000.00. Plaintiff issued its fire insurance policy insuring a farm house and barn, the former in the sum of $6,200.00, for a five-year term. In May, 1965, defendants moved from the trailer they had been occupying into the house and purchased new furniture which they insured with the Gulf Insurance Company. On the advice of that agent, they added $6,000.00 insurance on the house. No notice of this insurance was given to the plaintiff nor was written permission endorsed on its policy prior to a fire on June 30, 1965, which destroyed the house, causing an agreed loss of $16,000.00 to the house. The plaintiff paid the policy amount of $6,200.00 to the Veterans Administration as it was obligated to do, and the Veterans Administration continued to hold the mortgage and note signed by the defendants as security for the loan. The policy provision relied upon by the company provides:

"Other Insurance: Unless otherwise provided in writing added hereto, other insurance covering on any building which is the subject of insurance under this policy, is prohibited. If during the term of this policy, the insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy shall be suspended and of no effect."

The company does not contend nor is there any evidence that the defendants "voided" the policy by any unlawful or wrongful act, increased the hazard or risk assumed by the company, or that the "other

insurance" overinsured the house or contributed to the loss in any manner. The $12,200.00 total insurance on the house under both policies was substantially less than the agreed value and loss of $16,000.00.

The standard mortgage provision of the policy provided for payment to the Veterans Administration as mortgagee, and that it "shall not be invalidated by any act or neglect of the mortgagor." It further provided:

"Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim, that as to the mortgagor or owner, no liability therefor existed, this Company, shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option to pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his, or their claim."

Plaintiff paid the Veterans Administration on September 29, 1965, and instituted this action against the defendants November 30, 1967, to recover the amount so paid from defendants, alleging it was legally subrogated to all the rights of the Veterans Administration against defendants.

The record does not disclose any provision in the policy or mortgage imposing a personal obligation upon the defendants to reimburse plaintiff for either a partial or total payment of the mortgage debt, the only provision being that in the event of payment of the entire mortgage, plus interest, the Company would receive an assignment of the mortgage security.

Our courts have uniformly held that the standard mortgage clause constitutes a separate and distinct contract between the mortgagee and the insurance company up to the amount of the mortgage debt, and that the premium paid by the owner of the property is also the consideration for the company's promise to pay the mortgagee under the mortgage clause. Prudential Insurance Co. v. German Mutual Fire Insurance Association, 231 Mo.App. 699, 105 S.W.2d 1001; Northwestern National Insurance Co. v. Mildenberger, 359 S.W.2d 380. Our courts have also held where the policy is "void" as to the insured, as distinguished from "suspended" as in the present policy, the Company may acquire the mortgage security upon payment to the mortgagee of the entire balance due, which would include the right to foreclose upon a default pursuant to the terms of the mortgage as in the case of any mortgage holder. Such a foreclosure was upheld in Miller v. Union Assur. Society, 8 Cir., 39 F.2d 25, cited by plaintiff, but that case is clearly distinguishable from the present case. In Miller, the insured during the Prohibition Era knowingly permitted his three-story building to be used for the illegal distillation of alcohol in violation of the federal prohibition and revenue laws. The stills occupied all three floors and produced 1200 gallons of alcohol every 24 hours and apparently caused the fire which damaged the building. The company declared the policy void because of the illegal operation and the increased hazard and paid the mortgagee in full, taking an assignment of the note and mortgage. It then filed against Miller to foreclose the mortgage and declare the policy void, which was upheld by the court, saying, l. c. 27 and l. c. 29:

"Asserting that the policies had become void as to the mortgagor, the appellee claimed the rights vouchsafed by the foregoing provisions and instituted its suit in equity for recovery against the

appellant and for a decree of foreclosure against the real estate.

\* \* \* \* \* \*

"The policies provided that they should be void in the event of a change of possession with increase in hazard. There was such a change of possession of a part of said premises with a very material increase in hazard. The policies became void under this provision. Appleby v. Firemen's Fund Ins. Co., 45 Barb. (N.Y.) 454, (second appeal) 54 N.Y. 253; Planters' Mutual Ins. Ass'n. of Arkansas v. Dewberry, 69 Ark. 295, 62 S.W. 1047, 86 Am.St.Rep. 195."

In Lowenstein v. Queen Ins. Co., 227 Mo. 100, 127 S.W. 72, after insured property suffered a fire loss, plaintiff, who held a second mortgage, foreclosed and purchased the property at the foreclosure sale. The company claimed the insured violated the policy by failing to file proofs of loss. (He did file proofs for loss of personal property, which gave the company all pertinent information, but refused to file proofs for the house because of some differences with plaintiff.)

Relying on this violation, the company paid the amount due under the first mortgage, taking assignments thereon, and sought to foreclose on the first mortgage. Plaintiff brought suit to cancel the first mortgage, contending the company was obligated to pay mortgagee under the policy and therefore had no right to subrogation or to acquire the first mortgage or foreclose on the loan. The court found that the company was obligated to pay the first mortgagee and had no right to subrogation or to acquire the mortgage or to foreclose, saying, l. c. 76:

"The right of subrogation is an equity that arises out of a condition, and does not depend on contract. Like a vendor's lien or a resulting trust, it arises when justice demands it and the course of equity jurisprudence allows it.

\* \* \* \* \* \*

But even if there had been no waiver of the proofs of loss, the defendants acquired no title to the notes and deed of trust obtained from Farrar; the money they paid him was simply in payment of a debt they owed, and the only thing they acquired was a discharge of their obligation."

In reaching its conclusion the court relied upon Traders Ins. Co. v. Race, 142 Ill. 338, 31 N.E. 392, which was a similar action by the company to foreclose a mortgage which it acquired after denying liability to the owner because he had permitted the property to become vacant. The court held, l. c. 394:

"One of these principles is, a court of equity will never enforce either a penalty or a forfeiture. 2 Story, Eq.Jur. § 1319; 1 Pom.Eq.Jur. §§ 459, 460. And so it must follow here that, to entitle appellants to the relief they claim, they must prove, not merely that the premises were vacant or unoccupied at or before the time the fire occurred which destroyed the insured property, but that such vacancy or unoccupancy contributed in some degree to the causing of that fire or the prevention of its extinguishment; for, if the causation and the control of the fire were unaffected by the fact of vacancy or unoccupancy, to allow appellants to avoid liability, and recover what they have paid on account of the insurance, by a foreclosure of this mortgage, would, in effect, be to enforce a forfeiture,—decree a recovery,—on a mere technical legal breach of a contract."

In Equitable Fire & Marine Ins. Co. v. Holland Banking Co., 214 Mo.App. 560, 262 S.W. 444, the property owner conveyed the insured property without giving notice to the insurance company, which denied liability to him for a subsequent fire loss. The company admitted liability to defendant bank, as mortgagee, and paid the loss of $1,059.80 to the bank, taking a written

subrogation agreement from the bank. Subsequently the owner paid the remaining balance of the loan to the bank which, cancelled and released the note and deed of trust, whereupon the insurance company sued the bank to recover the amount it had previously paid. The court ruled against the insurance company, saying, l. c. 446:

"* * * plaintiff admits that the policy was, at the time of the fire, in full force and effect so far as concerned the mortgagee or his assigns. In other words plaintiff admits liability, under the policy, to defendant; hence it was not necessary for defendant to enter into any agreement in order to recover on the policy. * * * If plaintiff was liable to defendant for the loss it was not necessary for defendant to promise to do anything in order to recover. There was no consideration for the alleged promise of defendant to hold the mortgage debt, etc., in trust as pleaded in paragraph 4. Such promise was wholly gratuitous. Defendant's right to recover as mortgagee on the policy was in no manner dependent upon plaintiff's right of subrogation."

In National Ben Franklin Fire Ins. Co. v. The Praetorians, 67 S.W.2d 333 (Texas), the insurance company denied liability to the owner for a fire loss and made a partial payment of the mortgage debt to the mortgagee as in the instant case. Shortly thereafter the mortgagee foreclosed and purchased the property at the foreclosure sale for substantially less than the mortgage debt, whereupon the company demanded a credit and a refund from the mortgagee. In denying recovery the court adopted the following quotation from Joyce on Insurance, l. c. 334:

"An insurer who has paid a loss to a mortgagee is not entitled to be subrogated to the mortgage debt while any part of it remains unpaid. In other words, the insurer is not entitled to subrogation, if any part of the debt is unpaid, unless he tenders to the mortgagee the balance due."

▆ Plaintiff makes no contention and there is no evidence that the additional insurance purchased by defendants contributed to cause the fire loss or increased the hazard or risk under its policy in any degree. The purpose of the policy provision requiring notice of other insurance is to prevent overinsurance of the property and the resultant increase in the hazard of fire, and our courts have uniformly upheld the validity of such provisions in actions by such policyholders against the companies. Conceding that by acquiring additional insurance without notice to the company defendants' insurance was "suspended" and they thereby lost their right to recover in a suit against the company, it does not follow that such "suspension" creates a personal liability for the amount paid by the company under its separate coverage of the mortgagee's interest.

There is no policy provision providing for personal liability against the defendants, but the mortgage clause does subrogate the company to the "rights" of the Veterans Administration "under all securities held as collateral" upon payment to them if there is no liability to the defendants under the policy. These securities were the defendants' note and mortgage for $15,000.00, which could not be partitioned and which the Veterans Administration was entitled to hold until its loan was fully paid.

▆ The only "rights" that the Veterans Administration had involving the defendants were those it acquired by virtue of the note and mortgage executed by defendants, which was not in default at any time. Obviously, the Veterans Administration had no right to sue defendants under its mortgage for the $6,200.00, and consequently there was nothing plaintiff could acquire from the Veterans Administration unless it paid the entire balance due on its loan and acquired defendants' note and mortgage. In no event would plaintiff acquire any right to sue defendants for $6,200.00, but could only proceed to foreclose under

the mortgage security in the event of a default of the mortgage debt.

The prohibition against "other" or unauthorized insurance is a general provision applicable to all policies insuring both encumbered and unencumbered property. In such instances, if the property is unencumbered, the insured's right to recover is suspended; if mortgaged and the loss exceeds the debt, the insured's right to recover the excess is likewise suspended, and, in addition, at all times the company has the option to pay the mortgage and acquire the mortgagee's rights, to wit, the mortgage security.

The Veterans Administration, under its mortgage, was entitled to the collateral security of the entire property for its loan, and the insurance it received merely replaced the quantum of the security which was destroyed by the fire. The money plaintiff paid was due and owing to the Veterans Administration under the express terms of the policy without any limitation or exception, and as stated in Lowenstein v. Queen Insurance Company, supra, it was "simply in payment of a debt (it) owed, and the only thing (the company) acquired was a discharge of (its) obligation."

We must assume that the company carefully prepared its policy and mortgage provisions, and if it desired to hold the policyholder personally responsible for reimbursing it for such losses, this should have been expressly set forth in its policy with the same particularity as other obligations to pay money.

Finding no equitable or legal basis for plaintiff's claim against the defendants, the judgment of the trial court is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of FLOYD L. SPERRY, Special Commissioner, is adopted as the opinion of the Court. All concur.