## CITIZENS NATIONAL BANK, Appellant,

v.

## STATE FARM MUTUAL INSURANCE COMPANY, Respondent.

### No. 28045.

Missouri Court of Appeals,
Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer Denied June 1, 1977.

Robert L. Shirkey, Kansas City, for appellant.

Spencer J. Brown, Deacy & Deacy, Patrick C. Cena, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

HIGGINS, Special Judge.

Appeal from judgment on trial de novo, Section 512.270, RSMo 1969, in action on automobile insurance policy. The question is whether the policy covered the destroyed vehicle (1972 Ford pickup truck) as a newly acquired vehicle after termination of coverage on the vehicle (1969 two-door Ford Torino) described in the policy. Affirmed.

On May 15, 1972, Raymond Lee Sanson purchased a policy of automobile insurance from State Farm Mutual Insurance Company, Joel Valbracht, agent, covering a 1969 two-door Ford Torino. Citizens National bank had financed Mr. Sanson's purchase of the Torino May 4, 1972, and State Farm delivered to Citizens National a Memorandum of Insurance to Lienholder describing coverage afforded the lienholder with respect to the Torino effective "05–15–72 until terminated." The Memorandum of Insurance contained a "Message to Lienholder":

"This confirms that the policy described hereon includes a loss payable clause protecting the interest of the lienholder with respect to the described automobile to the extent of the insurance provided, from the Policy Effective date shown until terminated.

"You will be given 10 days notice protecting your interest if the policy is cancelled or terminated. * * *

"The lienholder shall notify the company within 10 days of any change of interest or ownership which shall come to the knowledge of said lienholder and failure to do so will render this policy null and void." [1]

Raymond Sanson failed to pay the premium required to continue the policy in effect beyond August 14, 1972, and State Farm mailed to him and to Citizens National a Notice of Termination of Insurance for failure to pay the necessary premium. Both the lienholder and the insured acknowledged receipt of the Notice of Termination. The notice provided also:

"Pursuant to the terms of the policy, we will continue the insurance in force for 13 days after the date of this notice for exclusive protection of and to the extent of your interests as they are affected by the ownership, maintenance or use of the automobile described in the policy and subject to the limits hereof."

On or about September 5, 1972, Mr. Sanson traded the 1969 Ford Torino to purchase a 1972 Ford pickup truck, financed by Citizens National September 6, 1972. Citizens National acknowledged that its interest in the Torino ceased on that date when the note against it was refinanced in the purchase of the pickup truck. Mr. Sanson acknowledged that he had no insurance when he negotiated the financing of the pickup truck.

On September 5, 1972, Mr. Sanson called Mr. Valbracht and "told him I was trading for a new truck, and I would be in on Saturday [September 9] to pay him for his insurance, and I didn't make it." Mr. Sanson did not "make it" in that he wrecked the pickup truck on September 9, 1972. It was a total loss.

The policy of insurance issued to Mr. Sanson on the Torino contained a provision for physical damage deductible collision coverage. It also provided for loss to the owned motor vehicle, defined as "the motor vehicle * * * described in the declarations [1969 Two Door Ford Torino], and includes * * a newly acquired automobile," defined as "an automobile, ownership of which is acquired by the named insured * * * if * * * it replaces an automobile * * * covered by this policy."

State Farm refused to pay the lien of Citizens National on the destroyed pickup truck and this action ensued.

Preliminary to entry of judgment denying recovery for loss of the pickup truck, the court found that it was not a replacement for a vehicle covered by the policy in question within the provision for coverage of a newly acquired vehicle as defined in the policy.

Appellant charges the court erred asserting that defendant's insurance policy provided coverage to the insured's pickup truck, destroyed September 9, 1972, after its acquisition September 5, 1972, "(Timely Notice of Acquisition Having Been Given [2])," in that "the policy and all provisions * * * constituted a standard or union mortgage clause and therefore a separate and distinct contract between plaintiff and defendant, irrespective of defendant's relationship with its insured or coverage he may have thereunder." Appellant cites a number of cases, e. g., *Prudential Ins. Co. v. German Mutual Fire Ins. Ass'n*, 231 Mo.App. 699, 105 S.W.2d 1001 (1937), and *MFA Mutual Ins. Co. v. Huddleston*, 459 S.W.2d 104 (Mo.App.1970), discussing standard or union mortgage clauses as distinguished from open clauses; and *Burns v. Insurance Co. of Pennsylvania*, 224 S.W. 96 (Mo.App.1920), and *Burns v. Ohio Farmers' Ins. Co.*, 224 S.W. 98 (Mo.App.1920), for the

---

1. This paragraph of the "message" was also contained in the "Declarations" section of the policy.

2. There is no evidence that the lienholder notified State Farm of any change of interest or ownership as provided in the Memorandum of

Insurance and the policy. The only evidence relating to appellant's assertion is Mr. Sanson's testimony that he called Mr. Valbracht September 5, 1972, to advise he was trading for a truck and would arrange to insure it on the 9th.

proposition that the interest of a mortgagee cannot be invalidated by any act or neglect of the mortgagor. Appellant argues that the standard or union mortgage clause in defendant's policy was "a separate contract * * * and that the defendant having been notified of a change of interest or ownership within the admitted time frame allowable by the policy," the pickup truck became and was covered as a newly acquired automobile.

There is no question that the mortgage clause in the policy in question is a standard or union clause as distinguished from an open clause. Nevertheless, it does not operate on the insurance contract covering a 1969 Torino to create coverage in favor of the lienholder on Mr. Sanson's pickup truck where coverage on the truck was never afforded by the policy. The effect of such provision and the rights of the parties are determined by reference to the insurance policy. *General Motors Accept. Corp. v. Western Fire Ins. Co.*, 457 S.W.2d 234 (Mo. App.1970); *Bilsky v. Sun Ins. Office, Limited, of London, England*, 231 Mo.App. 1072, 84 S.W.2d 171 (1935).

The contract between State Farm and Mr. Sanson was for State Farm to provide the coverages defined in the policy from May 15, 1972, to August 14, 1972, when the policy obligation was terminated for failure to pay premiums. The policy covered a 1969 Ford Torino, in which Citizens National had established a security interest May 4, 1972, when Mr. Sanson purchased it and financed it at Citizens National. The bank thereby acquired an insurable interest in the Torino and was protected against loss of the security under the loss payee or beneficiary clause to the extent of its interest in the Torino in the insurance contract between Mr. Sanson and State Farm.

Mr. Sanson terminated his contract with State Farm when he failed to make the premium payment necessary to extend the policy beyond the premium due date August 14, 1972. When payment due August 14, 1972, failed, State Farm sent notice of termination of insurance to both Mr. Sanson, the insured, and Citizen's National, the

lienholder or loss payee. The notice to the bank continued the insurance in force for benefit of the bank thirteen days.

There is no question under the evidence that Citizen's National knew of the termination of the insurance with Mr. Sanson when on September 6, 1972, Mr. Sanson was at the bank to arrange financing for his purchase of the pickup truck. At that time Citizen's National by the terms of the policy could be protected, if at all, only with respect to the Torino described in the policy and only as long as it had an interest in the Torino. Such interest admittedly ceased September 6, 1972, when the bank renegotiated the note with the Torino as security in financing the purchase of the pickup truck. Accordingly, the contract between State Farm as insurer and Citizens National as loss payee on the Torino was extinguished.

In order for Citizens National to establish a right to protection against loss of the pickup truck, it would need to establish either a new contract insuring the pickup truck or that it was somehow entitled to coverage on and after September 6, 1972, when the Torino passed out of the picture, under the prior contract.

There is no evidence of a new contract of insurance purchased by Mr. Sanson or Citizens National describing the pickup truck as the vehicle insured. (That may have been the intention of Mr. Sanson prior to September 9, 1972, but he failed so to do, and wrecked the pickup that day.)

Nor can Citizens National qualify the pickup truck for coverage as a newly acquired automobile to replace an automobile covered by the policy in question.

In order for coverage to be extended to Citizens National on the pickup truck as a newly acquired vehicle, there must be a policy of insurance in force on the replaced automobile. It is undisputed that there was no coverage on the Torino at the time it was traded for the pickup because the insured had allowed its coverage to terminate for nonpayment of premium; and the 13-day period of extended coverage on the Torino had also expired.

It was not the failure of the insured to pay the renewal premium which invalidated his coverage of a newly acquired vehicle; it was the failure to comply with the policy provision which required that there be coverage on the vehicle replaced at the time of its replacement in order to have coverage on the replacement vehicle. Thus, the pickup truck was not covered by the policy because there was no coverage absent compliance with the policy's provisions.

Judgment affirmed.

All concur.