**CHARTER BANK OF BOONVILLE,**
Respondent,

v.

**SHELTER GENERAL INSURANCE,**
Appellant.

**No. WD 34382.**

Missouri Court of Appeals,
Western District.

Jan. 17, 1984.

David A. Oliver, Columbia, for appellant; Oliver, Walter, Carlton, Atkinson and Wilson, Columbia, of counsel.

J. Michael Conway, Boonville, for respondent; Conway & Blanck, Boonville, of counsel.

Before PRITCHARD, P.J., SHANGLER, J., and TURNAGE, C.J.

PRITCHARD, Presiding Judge.

The issue is whether respondent, Charter Bank of Boonville, the lienholder upon a 1977 Chevrolet truck, had collision coverage, by virtue of a loss payable clause in appellant's policy of insurance issued to one Whitworth and spouse who permitted the policy to lapse for non-payment of a premium, after which they traded in the vehicle designated in the policy.

Charter Bank's predecessor, National Bank of Boonville, was named as loss payee in the Whitworths' policy, covering a 1977 Ford pickup truck, with an inception time of April 23, 1979, and an expiration date of July 23, 1979. The Loss Payable Clause in pertinent parts, is this: "If a loss payee is named in the declarations, such insurance as is afforded under Coverages F [collision], G, and H of the policy shall insure the interest of the loss payee *at the time of any loss or damage to the automobile* and payment for such loss or damage shall first be made to the loss payee for his interest and the balance, if any, to the named insured. This insurance as to the loss payee shall not be invalidated by any act or negligence of the Insured, nor by any change in the title or ownership of the automobile. *Upon cancellation or termination of the policy or the coverages insuring the loss payee's interest, the company agrees to give written notice thereof mailed to the loss payee's address shown in the declarations and such coverages, as respects the loss payee's interest, shall continue for ten days following the mailing of such notice. If termination or cancellation is for non-payment of premium required for continuance or renewal of the policy, the loss payee may elect to pay the premium to keep in effect the coverages insuring its interest.* * * * Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements, limitations or exclusions of the policy *other than as herein stated.*" [Bracket and emphasis supplied.]

The Whitworths did not pay the premium to renew the policy before or after its expiration date, July 23, 1979. Mr. Whitworth could not recall ever having received a premium notice for that date, and had not seen the notice, Defendant's Exhibit A, but appellant's Mr. John Moss testified that it and a lapse notice were sent to him (by computer mailout). There is no dispute that no lapse or renewal notice was sent to respondent before August 20, 1979.

On July 30, 1979, Mr. Whitworth bought another pickup truck, a 1977 Chevrolet, again financing it through respondent, as a replacement for the 1977 Ford. No notice was ever sent to appellant of the acquisition of the replacement vehicle, and no insurance was ever procured on the Chevrolet. On August 18, 1979, Mr. Whitworth caused collision damage to the Chevrolet pickup in total reasonable repair cost of $2,746.29, which was the amount of the judgment entered by the trial court. There is no dispute here as to the amount of the judgment, and appellant does not ask that there be a remittitur of the $250 deductible as provided by the policy if the judgment be affirmed.

Mr. Whitworth notified respondent of the collision on August 21, 1979, but he did not notify appellant of the damage. On August 20, 1979, appellant mailed a notice to respondent that its interest, if any, as loss payee of the policy would be terminated and cancelled ten days thereafter because the premium had not been paid. On August 30, 1979, respondent, through its counsel, and by letter, notified appellant of Whitworth's purchase of the Chevrolet pickup truck, of its wreck on August 18, 1979, and that following the accident, Mrs. Whitworth advised it that they had not paid the premium and that they had received a notice of cancellation. The letter went on: "No notice was given to the bank as re-

quired by the lost (sic) payable clause in the policy. Accordingly, the bank is exercising its election to pay the premium to keep coverage in force. Enclosed please find a check from the bank payable to Countryside Casualty Co. [appellant's predecessor] in the sum of $63.60. If there is an additional premium assessment with relation to the change of vehicles, please advise. * * *." This letter was received by appellant on August 31, 1979, and subsequently it denied liability and rejected the tender of the premium.

Appellant's first point is that the trial court erred in holding that the interest of the loss payee was transferred from the vehicle identified in the policy to the vehicle actually damaged in the collision despite the fact that the vehicles were traded after the policy period ended and without notice to the insurer as required by the insuring agreement. It relies upon *Citizens National Bank v. State Farm Mutual Insurance Company,* 552 S.W.2d 50 (Mo.App.1977). That case may be distinguished. First, the "Message to Lienholder" and a policy provision placed this affirmative duty upon appellant: " 'The lienholder shall notify the company within 10 days of any change of interest or ownership which shall come to the knowledge of said lienholder and failure to do so will render this policy null and void.' " The facts were that Citizens National Bank had knowledge that the originally identified automobile had been traded, through its financing of a replacement vehicle, as it acknowledged, and it did not, as required by the loss payable clause, so notify the insurer. In this case, the duty to notify insurer of the changed vehicle was placed solely upon the named insureds in the policy declarations, and not upon the lienholder. Although there is the fact that Charter Bank of Boonville (or its predecessor) had knowledge that the original designated vehicle had been replaced, there is no evidence that the named insureds, as was their duty, had not so notified appellant. Nor is there any evidence that Charter Bank knew that the Whitworths had not paid the renewal premium at that time, which is the second distinguishing fact in the Citizens National

Bank case, as both appellant there and the named insured had notice of the non-payment of premium, and both ignored the 13 day grace period provided them by the insurer, which both conceded they had received.

The loss payable clause here is in nature similar to what has been called a union or standard mortgage clause under which "the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the property", and it is held by most courts that it operates as an independent contract between the insurer and mortgagee. 43 Am.Jur.2d, Insurance, § 1045, p. 1046. See also Couch on Insurance 2d, § 42:728, p. 761, and these Missouri cases holding that it constitutes a separate and distinct contract between the mortgagee and the insurer up to the amount of the debt secured: *Northwestern National Insurance Company v. Mildenberger,* 359 S.W.2d 380 (Mo.App.1962); and *M.F.A. Mutual Insurance Company v. Huddleston,* 459 S.W.2d 104 (Mo.App.1970).

The separate and distinct contract of insurance as to the Whitworths had expired as to them on July 23, 1979, by reason of non-payment of the premium then due. They did not, therefore, acquire the replacement Chevrolet pickup while the policy *was in force* so as to activate Clause VII of the policy providing "Automatic Insurance for Newly Acquired Automobiles". As to respondent, however, the situation is different because the policy continued to cover it under the loss payable clause after July 23, 1979, up to the time of loss because it had not been given a notice of cancellation or termination, nor provided with the election within ten days thereafter to pay the premium and continue the policy in force. The Automatic Insurance Clause for Newly Acquired Automobiles does not require any action on the part of the insured for thirty days after the new vehicle was acquired, and respondent, as a separate insured, was thus automatically covered when the loss occurred. The "Automatic Insurance for

Newly Acquired Automobiles" clause is a coverage of the policy, to which reference must be made to construe the provisions of the loss payable clause. *General Motors Acceptance Corporation v. Western Fire Insurance Company,* 457 S.W.2d 234, 236[1] (Mo.App.1970), and cases and authority cited. That reference may be for the purpose of determination of policy coverage, as here, or to determine if an exclusion of coverage is applicable, as was the case in the General Motors Acceptance Corporation decision, supra (exclusion of coverage where the vehicle was being driven by a named person). When the loss payable clause and the provision of the policy for automatic coverage of newly acquired vehicles are read together, it is clear that respondent had collision coverage on the new vehicle during the thirty day period and up to the time of loss. Appellant's first point is ruled against it.

By its second point, appellant contends that the trial court erred in holding that although the policy may have terminated as to the insureds (the Whitworths), respondent's interest remained in effect as if the premium had been paid until it received notice of non-payment and then for ten days thereafter, despite the fact that the loss payee was aware of the transfer of vehicles but took no action to protect its interest in the newly acquired vehicle. The contention is partly answered by the consideration of the *Citizens National Bank case,* supra, where there as an affirmative duty placed upon the lienholder by the loss payable clause to notify the insurer of any change of ownership of the vehicle of which it had knowledge. There is no provision here requiring respondent to take any action to protect itself, and there is no evidence that it knew that the Whitworths had not paid the renewal premium, or that they had not notified appellant of the change in ownership.

There is another facet to this second contention. Since the coverage continued as to respondent lienholder, liability had attached as of the date of loss, August 18, 1979. Appellant could not, therefore, retro-

actively terminate the coverage, as it apparently attempted to do in issuing its notice on August 20, 1979, to respondent, and then claim that it had not given notice of the changed vehicles within thirty days after acquisition of the new vehicle. See and compare *Bassett v. Federal Kemper Insurance Company,* 565 S.W.2d 823, 826[1] (Mo. App.1978), and cases cited.

The judgment is affirmed.

All concur.