Charles GLASS, Donna Glass, and Billy Glass, Plaintiffs–Appellants,

v.

MISSOURI PROPERTY INSURANCE PLACEMENT FACILITY, Defendant–Respondent.

No. 20122.

Missouri Court of Appeals, Southern District, Division One.

Nov. 14, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 4, 1995.

Application to Transfer Denied Jan. 23, 1996.

Michael Moroni, Law Firm of Donald Rhodes, Bloomfield, for plaintiffs-appellants.

Matthew R. Shetley, Crow, Reynolds, Preyer, Shetley & McVey, Kennett, for defendant-respondent.

MONTGOMERY, Presiding Judge.

This is an appeal by Plaintiffs Charles Glass and Donna Glass, his wife, and Billy Glass, mortgagees under a fire insurance policy, from a judgment holding that there was no insurance coverage in effect on December 11, 1988, when the premises in question were destroyed by fire. The trial court concluded:

> The insurance policy in this matter expired December 10, 1988 at 12:01 a.m. The premium tendered by mortgagees was not received by the Facility until December 14, 1988. In addition, said policy was not "canceled" anytime during its term, thus alleviating the necessity of the Facility to notify the mortgagees 10 days in advance of a cancellation.
>
> The insurance policy did not expire for non payment of the premium as Plaintiffs contend, but instead expired at the end of the one year term....

Plaintiffs brought this action based on a policy issued by Defendant Missouri Property Insurance Placement Facility (hereinafter "Facility"). Following a trial to the court on a stipulation of facts, with supporting exhibits, judgment was entered in favor of Facility.[1]

---

1. "Facility is a statutory entity made up of all property insurers authorized to do business in Missouri. Its purpose is to provide property insurance to persons who are entitled to insurance but are unable to obtain coverage through ordinary methods. §§ 379.810 to 379.880. Facility refers to these policies as 'the Missouri Fair Plan.'" Graue v. Missouri Property Ins. Placement Facility, 847 S.W.2d 779, 782 (Mo. banc 1993).

The facts stipulated by the parties include the following:

1. On October 1, 1983, Charles D. Morgan and Margie E. Morgan, his wife, purchased an equitable interest in real estate through Articles of Agreement for a Warranty Deed from Charles Glass and Donna Glass, husband and wife, and Billy Glass and Phyllis Glass, husband and wife. Said property located in Stoddard County, Missouri and being described as follows: [legal description].

2. On March 10, 1987, Billy Gene Glass received all interest in said realty owned by Phyllis Glass through Decree of Dissolution of Marriage . . . .

. . . .

4. On December 10, 1987, Defendant issued a policy of fire insurance to Charles Morgan, Policy Number 52734, providing coverage on the building located on the above-described real estate in the amount of $15,000.00 and said policy named Charles Glass and Billy Glass as first loss payee under the mortgage or loss payable clause . . . .

5. The effective coverage dates of said policy as set forth on the declarations page were from December 10, 1987 at 12:01 a.m. until December 10, 1988 at 12:01 a.m . . . .

6. On November 17, 1988, the insured, Charles Morgan, submitted an application for renewal of policy number 52734 on the above-described premises . . . .

7. On November 29, 1988, the defendant mailed to the insured, Charles Morgan, and the producer, Donna Glass Shelter Insurance, a quotation for renewal of the policy coverage in the amount of $365.00 based upon the information provided in the application. The quotation further stated:

"RENEWAL. In order to renew your policy with no lapse in coverage, payment must be received before the expiration indicated above. If payment is received on or after the expiration date shown above, coverage will be effective 12:01 a.m. standard time the day following receipt of payment *provided* payment is received *within 45 days from expiration date* shown above. Quote is null and void thereafter."

. . .

. . . .

11. On December 10, 1988, policy number 52734 expired at 12:01 a.m. standard time.

12. On December 11, 1988, at 2:10 a.m., the above-described premises [were] destroyed by fire.

13. On December 12, 1988, Kim Bowling, agent and employee of the producer, Donna Glass Shelter Insurance, notified defendant's claim department by telephone that the above-described premises was a total loss and the fire occurred at 2:00 a.m. on December 11, 1988.

14. On December 14, 1988, the premium payment in the amount of $365.00 was received by defendant's claim department.

15. On December 20, 1988, the defendant mailed a letter to the producer, Donna Glass Shelter Insurance, which enclosed a check for $365.00 payable to Charles Morgan and advised said producer that at the time of the receipt of said premium, the object of insurance no longer existed. Copies of said letter were also sent to Charles and Billy Glass, Mercantile First County Bank and Charles Morgan . . . .

16. On December 20, 1988, the insurance adjusting agency, GAB, through its employee, A.V. Zadnick, advised the insured, Charles Morgan, and the producer, Donna Glass Shelter Insurance, by letter that the defendant would not accept liability due to a lapse in coverage at the time of the loss . . . .

. . . .

18. At the time of the loss on December 11, 1988, the insured Charles Morgan owed the balance of $12,765.60 based on the Article of Agreement for a Warranty Deed dated October 1, 1983, to Charles Glass and Donna Glass, his wife, and Billy Glass.

19. On October 22, 1991, the attorney for plaintiffs advised the defendant by letter that plaintiffs tendered payment of the premium as mortgagees under the policy and demanded payment for the loss based

upon paragraph 15 of the "Conditions" section of the policy which states, in part, as follows:

"If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee . . .

b. Pays any premium due under this policy on demand if you have neglected to pay the premium.

20. On October 25, 1991, the defendant advised plaintiffs' attorney by letter that the defendant will not issue a policy on property that has been destroyed and further that paragraph 15 of the policy did not apply to this situation.

21. Defendant did not send notice to the Plaintiffs of the cancellation of the policy at least 10 days before the cancellation took effect.

22. Defendant did not send a notice of cancellation or notice of non-renewal to any insured or listed loss payee prior to the loss.

■ That during the years 1987, 1988, and all other relevant times to this action, the Plaintiffs Charles Glass and Donna Glass were the owners and operators of Donna Glass Shelter Insurance Agency in Bloomfield, Missouri.

Our review is governed by Rule 73.01(c)(1)[2] and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "Under Rule 73.01(c)(2) an appellate court gives due regard to the trial court's opportunity to judge the credibility of witnesses. However, where the facts are derived solely from written documents such as pleadings, stipulations, exhibits, and depositions, the rule of deference to the trial court's assessment of credibility does not apply." *Farmers and Merchants Ins. Co. v. Harris,* 814 S.W.2d 332, 334 (Mo.App.1991) (citations omitted). Due to the stipulation of facts, the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo. banc 1979). Therefore, we must address the legal consequences of the stipulated facts, and if those facts show

that Plaintiffs are not entitled to relief, the judgment must be affirmed.

As background for consideration of the issues raised, it is helpful to understand the procedures necessary for obtaining insurance from Facility. In general, under §§ 379.810 through 379.880,[3] the issuance of a policy by Facility is initiated by request for inspection by an insured or a producer and an application for coverage. If the risk is accepted, Facility so advises the insured and producer and quotes the premium for such insured for one year. "The facility, upon receipt of the premium, shall within three business days issue the policy to be effective at 12:00 noon of the date of the receipt of the premium, unless a later effective date is specified. . . ." § 379.830.3.

All policies issued shall be for basic property insurance on the forms and in accordance with the rate or rating procedures approved by the director for use with the program. *Such policies shall be issued for a term of one year.*

§ 379.840 (emphasis added.)

A new application is submitted for each renewal or subsequent year. Following receipt of such an application, Facility may issue its acceptance and quote the premium for the renewal or subsequent policy period.

Regarding cancellation or nonrenewal, § 379.845.2 provides that "[a]ny notice of cancellation or notice of nonrenewal of a policy or binder issued under the program, together with a statement of the reason therefor, shall be sent to the insured and a copy retained by the facility. Any such notice shall be sent not less than thirty days prior to the cancellation or nonrenewal of any risk . . . ."

Plaintiffs contend in their first point relied on that the trial court erroneously entered judgment for Defendant because "the plain language of paragraph 15 of the insurance policy allows the mortgagees . . . to tender the premium and collect their interest in the premises after the loss even though the pri-

---

**2.** Rule references are to Missouri Rules of Court (1995).

**3.** Statutory references are to RSMo 1994, unless otherwise indicated.

mary insured has neglected to pay the premium."

Paragraph 15 of the policy, the mortgage clause, reads, in pertinent part:

If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. . . .

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

. . . .

b. pays any premiums due under this policy on demand if you have neglected to pay the premium;

. . . .

If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

Plaintiffs argue that the plain language of this provision allows them to recover their loss upon their payment of the premium. Plaintiffs believe the trial court's finding "that the contract expired at the end of one year rather than for non-payment of the premiums misses the point." The point, according to Plaintiffs, is that the mortgage provision gives them certain rights upon non-payment of the premium. Plaintiffs urge that even if the policy expired at the end of one year, the expiration is only effective as to the insured because "the independent policy of insurance gives the plaintiffs the right to tender the premium and collect their interest."

■ Correctly, Plaintiffs view paragraph 15 as a "union" mortgage clause. A standard or union mortgage clause operates as an independent contract of insurance between the mortgagee and the insurer which cannot be defeated by a breach of conditions of the policy on the part of a mortgagor. *Waynesville Security Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218, 220 (Mo.App.1973). However, "because the loss payable clause is endorsed subject to the 'terms, conditions, agreements or limitations' of the policy, the insurer's obligation to the plaintiff is no broader than its obligation to the insured, except as specifically stated in the endorsement." *Id.*

As specifically stated in paragraph 15, Facility has an obligation to pay Plaintiffs' valid claim if Plaintiffs pay any premium due under the policy should the insured fail to do so. The real question is whether Plaintiffs paid a "premium due under this policy" as allowed by paragraph 15 and thereby obtained mortgagee coverage.[4]

If the policy expired, as determined by the trial court, Plaintiffs had no "right" under paragraph 15 to obtain coverage by payment of the premium because no premium was due under the policy. This is the plain language of paragraph 15. *Waynesville Security Bank* teaches that a union mortgage clause gives Plaintiffs no broader rights to coverage than the insured unless otherwise stated in paragraph 15. As will be seen later, the insured in this case had no coverage because the policy expired before the loss occurred.

Plaintiffs rely on *Charter Bank of Boonville v. Shelter General Ins.*, 664 S.W.2d 44 (Mo.App.1984), where the mortgagee succeeded in recovering for a loss which occurred after the policy expired for nonpayment of premium. After the policy expired and a loss to the insured vehicle occurred, the mortgagee paid the premium under the following loss payable clause:

*Upon cancellation or termination of the policy or the coverages insuring the loss payee's interest, the company agrees to give written notice thereof mailed to the loss payee's address shown in the declarations and such coverages, as respects the loss payee's interest, shall continue for ten days following the mailing of such notice. If termination or cancellation is for non-payment of premium required for continuance or renewal of the policy, the loss payee may elect to pay the premium to keep in effect the coverages insuring its interest.*

*Id.* at 45.

The court noted that the loss payable clause was similar to a union or standard

---

4. Facility comments that it made no "demand" of Plaintiffs to pay the premium as mandated by paragraph 15(b). However, this argument is not further developed by Facility. Instead, Facility urges that we rule against Plaintiffs' position by following *Waynesville Security Bank*.

mortgage clause which constitutes a separate and distinct contract between the mortgagee and insurer. *Id.* at 46. The court held that "the policy continued to cover [mortgagee] under the loss payable clause after [expiration date], up to the time of loss because [mortgagee] had not been given a notice of cancellation or termination, nor provided with the election within ten days thereafter to pay the premium and continue the policy in force." *Id.*

· *Charter Bank* does not apply here because of the obvious differences between the two mortgage clauses. *Charter Bank's* mortgage clause required the insurer to notify the mortgagee of cancellation or termination of the policy and gave the mortgagee an option to pay the premium and continue coverage. No such provision appears in paragraph 15.

We believe Plaintiffs' contention is answered by holdings in *Hammond v. Missouri Property Ins. Placement Facility*, 731 S.W.2d 360 (Mo.App.1987), *Hecker v. Missouri Property Ins. Placement Facility*, 891 S.W.2d 813 (Mo. banc 1995), and *Waynesville Security Bank, supra.*

In *Hammond,* the court said that the renewal of a Facility insurance policy "is a separate and distinct contract for the period of time covered by the renewal" and that "the reinstatement of a lapsed policy constitutes a new contract." 731 S.W.2d at 364. There, the policy was in effect from September 19, 1981, through September 19, 1982, and the loss occurred on November 27, 1982. The court said:

> There can be no question that the policy in the case at bar lapsed on September 19, 1982 when no premium was received prior to the expiration of the policy.

*Id.* at 364.

▇▇ We have noted that Facility is authorized by § 379.840 to issue policies only for a one-year term. Therefore, as illustrated by *Hammond,* the Facility policy here lapsed on December 10, 1988, when no premium was paid prior to its expiration date. If the insured had tendered the premium payment after December 11, 1988, as the Plaintiffs did, no coverage for the loss would have resulted based upon *Hammond.* Plain-

tiffs' rights to coverage are no broader than the insured's unless paragraph 15 so provides. That paragraph only allows Plaintiffs to pay a premium due under the policy if the insured fails to do so.

*Hecker* reinforces our view of *Hammond* concerning expiration of Facility policies. There, the consolidated appeals presented the issue of whether a Facility insurance policy expired at the end of one-year policy terms even though Facility sent no notices of nonrenewal or cancellation as required by § 379.845.2. The Supreme Court said that if the Facility makes no decision as to the renewal of a policy, "there is neither a cancellation nor a nonrenewal, and therefore no notice is required." 891 S.W.2d at 816.

*Hecker* is important here because the court decided that both policies in question expired on the dates set forth in the policy and the insureds had no coverage for later losses. The court also confirmed that "the burden is on the insured to apply for renewal and purchase a new one-year policy." *Id.* Here, there was neither a cancellation nor a nonrenewal because Facility offered to renew the policy which the insured did not accept during the policy period.

Finally, *Waynesville Security Bank* involved a suit by the mortgagee under the loss payable clause in a fire insurance policy. The loss occurred after the policy expired. The insurer appealed from an adverse judgment claiming that it was under no obligation to notify mortgagee of the expiration of the policy or afford it an opportunity to renew. The loss payable clause, a standard or union clause, provided that the mortgagee's interest "shall not be invalidated by any act or neglect of the ... Mortgagor or Owner," and further stated that "in case the ... Mortgagor or Owner shall neglect to pay any premium due under [the] policy the Lienholder shall, on demand pay the same." 499 S.W.2d at 219–20. The insurer reserved the right to cancel the policy upon notice to the lienholder, but the loss payable clause made no provision for notice of the expiration of the policy. Plaintiff claimed that the loss payable clause was an independent contract binding the defendant to give notice of the

expiration or cancellation of the policy for nonpayment of the premium.

This Court explained that the policy was not cancelled during its 12–month term. Instead, the policy "terminated" or "expired" because termination refers to the expiration of the policy by lapse of the policy period. 499 S.W.2d at 220. Continuing, we observed that a "standard or union loss payable clause protects the mortgagee's interest against the mortgagor's breach of the *conditions of the policy,* but here there is no provision in the policy requiring the insured to renew it, and the disconnected sentence giving the plaintiff, as mortgagee, the right to pay any premium due if the mortgagor fails to do so is but declarative of the general law." *Id.* at 221 (citation omitted).

Plaintiffs' argument that paragraph 15 gave them a right to pay the premium and retain coverage after the policy expired is outside the protective scope of the loss payable clause. Paragraph 15 protected Plaintiffs' interest against the mortgagor's breach of policy conditions. The mortgagor breached no policy condition here because, as in *Waynesville Security Bank,* no provision in the policy required him to renew it. The mortgagor simply failed to purchase a new Facility policy before the loss occurred.

Furthermore, one condition of Facility's policy states that "[t]his policy applies only to loss which occurs during the policy period." This condition applies to Plaintiffs as well as the insured. No loss occurred here during the policy period because the policy expired prior to the loss. Under paragraph 15, Plaintiffs only had the right to pay a premium due under the policy in order to continue coverage. The trial court correctly decided this issue. Point I is denied.

■ Plaintiffs' last point alleges that the trial court erred by entering judgment in favor of Facility because the policy "was still in effect as to the plaintiffs as mortgagees under paragraph 15 ... in that [Facility] had not cancelled the mortgage coverage at the time of the loss by supplying ten days notice of the cancellation."

Plaintiffs' argument is based on paragraph 15 providing that the mortgagee is entitled to ten days' notice before Facility cancels the policy and on paragraph 17 which provides, in pertinent part:

> (b) We may cancel this policy only for the reasons stated ...
>
> (1) When you have not paid the premium ....

The obvious answer to Plaintiffs' contention is that Facility did not cancel the policy. Consequently, Plaintiffs were not entitled to notice of cancellation. *Hecker* has firmly established that an insured under a Facility policy is not entitled to notice of cancellation unless Facility intends to discontinue coverage during the term of the policy. The Supreme Court said that "[u]nder the plain language of [§ 379.845.2], a notice of *cancellation* is required only when the Facility intends to discontinue coverage of the insured during the term of the policy." 891 S.W.2d at 816.

Here, Facility offered to renew the policy as opposed to showing an intent to discontinue coverage during the policy term. Therefore, Facility took no action regarding cancellation which would invoke the notice requirements of the statute or the policy. Neither § 379.845.2 nor any policy provision requires notice of cancellation to the insured or mortgagee unless Facility intends to cancel during the policy term.

In *First Nat'l Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York,* 891 S.W.2d 140 (Mo.App.1995), this Court held that a loss payable clause entitling a lienholder to ten days' notice of cancellation did not entitle the lienholder to notice of the expiration of the policy. This decision heavily relied upon *Waynesville Security Bank* which we have earlier discussed. Both cases are factually similar to the instant case, and both cases address the identical issue which Plaintiffs argue here. The result in these cases requires us to deny this point.

Judgment affirmed.

FLANIGAN and GARRISON, JJ., concur.