Shanna **CHRISTIAN**, Respondent,

v.

**PROGRESSIVE CASUALTY INS,. CO.**, Appellant.

and

**Richard Maschmeyer**, Defendant.

No. 24174.

Missouri Court of Appeals, Southern District, Division One.

Oct. 26, 2001.

James E. Spain & Samuel P. Spain, Spain, Merrell & Miller, L.L.P., Poplar Bluff, for Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, C.J.

PER CURIAM.

This is an appeal from a judgment obtained against Appellant, Progressive Casualty Insurance Company, (Progressive) resulting from an equitable garnishment proceeding.[1] Respondent, Shanna Christian, (Christian) had earlier obtained a judgment against Progressive's insured, Richard Maschmeyer, (Maschmeyer) arising from Christian's claim for the wrongful death of her son, Dustin Gaines. The seven-year-old had suffocated after being entrapped in a refrigerator. Mr. Maschmeyer had tendered the defense of the underlying suit to Progressive but Progressive denied coverage under its policy and withdrew its representation of Maschmeyer. The case resulted in a judgment entered against Maschmeyer in the amount of two million dollars.

In the garnishment proceeding, which was submitted to the trial court under joint stipulation of facts together with exhibits,[2] Progressive denied coverage based on its policy's exclusion of bodily injury occurring on uninsured premises controlled by an insured; and on the policy's business pursuits exclusion. Judgment was entered in favor of Christian and against Progressive in the amount of the policy limits, $25,000.00.

■ "While this was a court tried case, it was on a stipulation of facts and was not

Daniel E. Wilke, Wilke & Wilke, P.C., St. Louis, for Appellant.

1. *See* § 379.200, RSMo 2000; *see also Adams v. Manchester Ins. & Indem. Co.*, 385 S.W.2d 359, 363 (Mo.App.1964).

2. Exhibits consisted of the policy with amendments; the underlying petition for wrongful death and its attendant judgment; a photo; and the January 17, 2000, and August 17, 2000, depositions of Richard Maschmeyer.

one involving resolution by the trial court of conflicting testimony." *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979); *Glass v. Mo. Property Ins. Placement Facility*, 912 S.W.2d 653, 656 (Mo. App.1995). Under these circumstances, "the determination of the trial court is considered a judgment on the merits." *American Family Mut. Ins. Co. v. Bramlett*, 31 S.W.3d 1, 3 (Mo.App.2000). "As such, the decision of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* at 3–4.

The joint stipulation of facts reveals the following. Progressive issued its policy of insurance to Maschmeyer, covering a 1967 Kit mobile home and encompassing the time period from August 22, 1997, until August 22, 1998. Maschmeyer lived in the 1967 Kit mobile home through the life of the policy period. He also maintained a salvage license from the mid–1980s until approximately 1999, which enabled him to purchase mobile homes that had been damaged and totaled out. His salvage license was in the name of "Hillcrest Mobile Homes." In 1995, Maschmeyer purchased a damaged 1994 Cavalier mobile home ("the mobile home") which was titled in the name of Hillcrest Mobile Homes. He testified that he bought the mobile home with the intention of renovating it and living in it, and it was still his intention to live in the mobile home at the time of Dustin Gaines' death. After he purchased the mobile home it was moved to property owned by his friend, Densil Morgan. According to Maschmeyer's deposition, Morgan had several mobile homes on the property. Maschmeyer also testified he had no interest in any of Morgan's property, nor did he lease any portion of the property. There was not a prepared pad at this new location and there were no utilities connected to the mobile home. Since Morgan and Maschmeyer were friends, Morgan did not charge Maschmeyer for the use of the unprepared pad on the Morgan property. The mobile home sat on this exact spot on the Morgan property from the time of its acquisition in 1995 until after the death of Dustin Gaines.

In 1995, Maschmeyer hired people to renovate the mobile home but ran out of money and couldn't complete the project. Later, he resumed the renovations in 1998. About a month prior to the death of Dustin Gaines, Maschmeyer began replacing paneling and cabinets that had been previously torn out of the mobile home. This required the removal of the refrigerator from the mobile home. The refrigerator was placed outside and next to the mobile home. The door was still affixed to the refrigerator. On the night of August 3 or the early morning hours of August 4, 1998, Dustin Gaines crawled into the refrigerator and suffocated. The cause of death was suffocation due to entrapment in this refrigerator. Progressive does not contest Maschmeyer's liability relating to the claim.

In Point One, Progressive asserts that the court misapplied the law and erred by entering judgment for Christian because the injury giving rise to the claim arose out of Maschmeyer's business pursuits and that the policy did not provide indemnity for such a claim. In Point Two, Progressive asseverates that the court misapplied the law and erred when it entered its judgment because the injury giving rise to the claim resulted from an accident that occurred on premises controlled by Maschmeyer, but not insured under the policy. Progressive maintains that the policy excluded coverage under these circumstances. This latter point is meritorious and dispositive of this appeal and is solely reviewed.

The policy contained the following pertinent provisions:[3]

Part II–Personal Liability Protection

A. Personal Liability

1. We will pay sums that you are legally responsible to pay, except for punitive or exemplary damages, for bodily injury ... caused by you ... which are payable under this policy, up to the limits of the policy....

Definitions Used Throughout This Policy

Bodily injury means bodily harm, ... or resulting death caused by an accident. ...

Business means any trade, profession, occupation or service of an insured person. For this definition, business includes any part-time, temporary, or permanent activity engaged in for compensation. ...

Insured premises means the mobile home and adjacent structures while not in transit. Also included are the adjacent grounds, sidewalks and drives used in connection with your mobile home.

Part II–Exclusions

...

A. Exclusions applying to both personal liability and Medical payments to others coverages.

We do not cover bodily injury ...

...

3. Arising out of any business pursuits of an insured person.

4. Occurring on any premises owned, rented or controlled by an insured person which is not the insured premises.

■■■ "An insured has the burden to prove coverage under a policy." *Estrin Const. Co. v. Aetna Cas. & Sur. Co.*, 612 S.W.2d 413, 419 (Mo.App.1981). "The burden rests on the insurer to prove that the loss was within a policy exclusion." *Id.* "The language in an insurance contract is to be given its plain meaning. If a policy is unambiguous it is to be enforced according to its terms, and if ambiguous, it is construed against the insurer." *Rice v. Fire Ins. Exchange*, 946 S.W.2d 40, 42 (Mo.App.1997). "[R]ules for construing contracts of insurance are inapplicable when a contract provision is clear and unambiguous." *American Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990).

■■■ "The interpretation of the meaning of an insurance policy is a question of law." *Bramlett*, 31 S.W.3d at 4. "When reviewing an insurance policy, the policy is given a reasonable construction and interpreted so as to afford rather than defeat coverage." *Id.* "Policy provisions designed to restrict, limit or impose exceptions or exemptions on insurance coverage are strictly construed against the insurer." *Id.*

Progressive contends that the trial court erred when it entered its judgment because the injury giving rise to the claim against its insured, Maschmeyer, occurred on premises controlled by him but which was not insured under the policy. Progressive argues that the "area surrounding the trailer was within the control of Maschmeyer" for purposes of enforcing the exclusionary language of the policy.

Christian argues on the other hand that Maschmeyer had no control over the premises as envisioned by the policy's exclusions clause. Christian maintains that

---

**3.** Bold faced words found in the policy are excluded. For ease of reading, Part II Personal Liability Protection paragraph is placed out of order.

there was no evidence that Maschmeyer had the right or even attempted to exercise any control over Morgan's property, nor did he have the right to prevent others from entering Morgan's property. According to Christian, "[a]ll he had the right to do was park his mobile home there and come and go for the purpose of refurbishing it." Citing cases such as *Hermann v. Lynnbrook Land Co.*, 806 S.W.2d 128 (Mo. App.1991) and *Annin v. Lake Montowese Dev. Co.*, 759 S.W.2d 240 (Mo.App.1988), she argues that at most Maschmeyer had a mere license or a privilege to enter the premises in question and then only for a limited purpose, and that this privilege did not vest any title, interest or estate in the licensee.

We observe that the word "controlled" is not defined in the policy. Turning to its dictionary definition, we note that, in pertinent part, Webster's New Collegiate Dictionary 247 (1977), defines the term "control" as "to exercise restraining or directing influence over: REGULATE ... to have power over: RULE." Webster's Third New International Dictionary 497 (1966), has defined the term "controlled" as "restrained, managed, or kept within bounds ... conducted or maintained in accordance with fixed rules, restraints, or procedures."

■ Christian is correct when she asserts that Maschmayer had but a license to enter upon Morgan's property. While a license merely allows the "privilege to enter certain premises for a stated purpose," *Hermann, supra,* at 130, nevertheless, in pursuit of a stated purpose, a licensee is authorized control over the limited area to which his license runs, even though there is no express vesting of title. "A license also involves the exclusive occupation of the property, but only 'so far as is necessary to do the act, and no further....'" *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 300 (Iowa 1994)(quoting 49 Am.Jur.2d, *Landlord and Tenant,* § 5 (1970)). Webster's New Collegiate Dictionary 399 (1977), defines "exclusive," *inter alia,* as: "1 b: limiting or limited to possession, control, or use by a single individual or group;" *see also* 25 Am.Jr.2d, *Easements and Licenses,* § 139 (1996)("A license allows occupation of a property only so far as it is necessary to do the licensed act, and no further.")

Here, Morgan accorded Maschmeyer a license to place the mobile home on his land. As a matter of practice this included the right to refurbish the mobile home. In effecting the object of his license, it is manifest that Maschmeyer exercised control over a limited amount of land upon which he had placed his mobile home, together with the immediate environs necessary to effectuate the purpose of the refurbishment of the mobile home in question. *See Robert's,* 520 N.W.2d at 300. In pursuance of refurbishing his mobile home, Maschmeyer or his worker(s) placed the refrigerator in question on the land immediately adjacent to the mobile home. Since the unfortunate accident occurred on premises uninsured under the policy, but nevertheless controlled by Maschmeyer, by virtue of his exclusive occupation of the property per the license granted him, the policy's exclusions language was effectuated. Point well taken. The trial court erred in its application of the law to the facts of the case. *See Bramlett,* 31 S.W.3d at 3–4.

The judgment is reversed.