RELIANCE INSURANCE COMPANY OF
PENNSYLVANIA, a Corpo-
ration, Respondent,

v.

COMMUNITY FEDERAL SAVINGS AND
LOAN ASSOCIATION, a Cor-
poration, Appellant.

No. 53808.

Supreme Court of Missouri,
Division No. 2.

April 14, 1969.

As Modified on Court's Own Motion for
Rehearing or to Transfer to Court
En Banc Denied May 12, 1969.

Adolph K. Schwartz, St. Louis, for re-
spondent.

Ziercher, Tzinberg, Human & Michen-
felder, Erwin Tzinberg, J. William New-
bold, Clayton, for appellant.

PRITCHARD, Commissioner.

Respondent had issued to appellant its
"errors and omissions" policy of insurance
on December 10, 1964, 1965 and 1966. Ap-
pellant is a corporation engaged in making
loans. Prior to November 10, 1965, appel-
lant was the owner of a deed of trust on
property approximately one mile from
O'Fallon, Missouri, on Old Highway 79.
On that date it foreclosed the property
and purchased the same at the foreclosure
sale for $18,070. There were thereafter
two policies of fire insurance procured by
appellant on the property totaling $18,700.
A fire occurred causing a loss in excess
of the policies of fire insurance on June
13, 1966, prior to which time the property
had been vacant for more than 60 days.
Appellant failed and omitted to notify its
insurers of such vacancy by reason of
which they refused to pay the loss under
the terms of their policies. This is the
"error and omission" which appellant
claims comes within the coverage of re-
spondent's policy in its counterclaim.

Respondent was successful in procuring
a declaratory judgment in the court below
that there existed no coverage. The basis
for that judgment is that its policy cov-
ered only appellant's mortgagee interest,

and not its ownership interest when it became the owner after foreclosure on November 10, 1965.

Respondent's errors and omissions policy was for a $600,000 limit, "Subject to the provisions and stipulations applying to Section I (here in question) and Section II, * * *."

"Insurance as provided herein attaches only with respect to the interest of the named Insured, specified by the insertion of the estimated average number of mortgage loans that will be in force during the term of this policy in each of the following categories: 19,200 mortgage loans owned by the named Insured; 800 mortgage loans serviced by the named Insured for the account of others; 20,000 Total."

"Provisions Applicable to Section I. A. Insuring Agreement. (1) Subject to the limit of liability, and the exclusions and conditions applying to Section I, *this Company agrees to indemnify the Insured against loss to the Insured's mortgagee interest* (including the Insured's mortgagee interest in any legal fiduciary capacity) in real property arising by reason of error or accidental omission in the operation of the Insured's customary procedure in requiring, procuring and maintaining valid insurance against the risks and perils described below; (a) payable to itself as mortgagee on such real property; and, (b) *on such real property during and after foreclosure by the Insured* or when sold under a conditional sales agreement or other instrument where title remains with the Insured; if, by reason of such error or accidental omission, requisite insurance is not in force at the time of loss. * * * B. Risks and Perils. (1) All risks and perils against which the Insured customarily requires its mortgagors to provide policy(ies) of insurance covering real property." The *first italicized portion of this clause is* that relied upon by respondent as limiting its liability to a mortgagee's interest; the second italics embody appellant's contention that the policy continued to apply after it became the owner thereof upon and after foreclosure.

The inference is fair that this property was not intended to be owned by appellant as a capital asset in the conduct of its loan business. There existed a security transaction, first upon making the original loan secured by a deed of trust, and then upon foreclosure. The normal procedure, as is well known, is that when a lender such as appellant purchases property in foreclosure, to protect his mortgage interest, attempts are made to resell the property for recoupment of loss, or to restore to the lender the amount of money due at the time of foreclosure. Ordinarily, it is true, the mortgagee's interest, *as such,* is terminated when the property is bought by it (or by a stranger) on foreclosure. See Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, 228 Mo.App. 139, 60 S.W.2d 1008, 1010 [3], a case of a standard open mortgage clause in the mortgagor's fire policy, held not to cover the mortgagee as an insured after it purchased at foreclosure; 45 C.J.S. Insurance § 565c, p. 333; and compare Ogden v. Hartford Fire Ins. Co., 199 Mo.App. 611, 204 S.W. 46.

Here appellant recognized that upon its purchase at foreclosure sale, its previous technical interest as mortgagee was extinguished. It then purchased fire insurance on its own account, but failed to notify those insurers that a vacancy existed. Under this circumstance the construction of the above last italicized clause (b) comes under scrutiny.

While not involving an errors and omissions policy such as here in issue, the case of Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n, 231 Mo.App. 699, 105 S. W.2d 1001, has analogous principles. There was in that case a "union mortgage clause" (differentiated in the other Prudential case, supra) attached to the mortgagor's policy. The property was foreclosed and the mortgagee became its owner upon sale. At 105 S.W.2d 1004 [2, 3], the court said, "It must have been contem-

plated by the parties at the time such clause was attached to the original policy that the mortgage might be foreclosed on certain contingencies and that the plaintiff's interest in the property insured might be enlarged by the passage to it upon such foreclosure sale of the full title to the property as a purchaser at said sale to protect its interest as mortgagee. * * * The purpose of the clause was to protect the plaintiff in whatever interest it had at the time of any loss. A mere change in the character of interest from that of mortgagee to that of owner is not sufficient to defeat the insurance granted the mortgagee, for it must be considered that such a change or the possibility thereof was within the contemplation of the parties when the contract was made." That appellant was in the mortgage loan business is obvious from the initial policy statements, well known to respondent, as it renewed the policy three successive years. The parties, as in the last Prudential case, supra, must be held to have contemplated a possible foreclosure sale at which appellant's interest would be enlarged to that of ownership.

Respondent's contention with respect to the clause "(b) on such real property during and after foreclosure" is that it could only refer to such real property in which appellant had a mortgagee interest; that the reference to foreclosed property is only the interest of a mortgagee in such property. "Thus it would protect the mortgagee interest if the subject property was bought by a third party at the foreclosure." The fallacy of the contention is that appellant would have had no interest whatsoever if a third party had purchased the property. The lien of the deed of trust would then be canceled, and the trustee's deed would run to the third party as grantee. On appellant's account there would be nothing to insure.

■ The policy of errors and omissions coverage here was issued directly to appellant, and so the factual situation is

different than in the Prudential case, supra (105 S.W.2d 1001). No "union" or "standard open mortgage clause" is here involved, and the insuring agreement is not so limited. A fair reading of the coverage clause applicable to Section I is that it was intended not only to cover errors and omissions as to policies of insurance on existing mortgaged property, but also to the same property *during and after foreclosure*. This latter clause should be extended to the time when the insured acquired a trustee's deed and assumed a full and enlarged ownership in the property. In so construing the clause a reasonable meaning is given it consonant with the reasonable expectations and intentions of the parties. Lawyers Title Ins. Corp. v. Research Loan & Invest. Corp. (C.A.8th), 361 F.2d 764; Brugioni v. Maryland Casualty Company, Mo., 382 S.W.2d 707.

The affidavit presented by appellant, unchallenged, shows that the amount in issue is $18,700 due to its omission in failing to notify the fire insurance companies of the vacancy. In the counterclaim appellant prayed for judgment in that amount plus interest from the date of loss.

■ Respondent's policy (attached to appellant's affidavit) provides that the amount for which it may be liable shall be payable 60 days after the proof of loss is received. That is the date the interest begins to run, and appellant is not entitled to interest from the date of loss. Wood v. General Ins. Co. of America, 229 Mo. App. 296, 77 S.W.2d 167, 169 [8].

The judgment is reversed and the case remanded to enter judgment for appellant in the amount of $18,700, plus interest after 60 days from the date of proof of loss made by appellant, upon further hearing to ascertain such date of proof of loss.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J. MORGAN, J., and POWELL, Special Judge, concur.

DONNELLY, J., not sitting.