**PERRY STATE BANK, Appellant,**

v.

**FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, Respondent.**

**No. WD 53530.**

Missouri Court of Appeals, Western District.

Sept. 30, 1997.

---

David C. Mobley, New London, for Appellant.

Paul Seigfreid, Mexico, for Respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Perry State Bank appeals the trial court's ruling that it was not entitled to recover under a fire insurance policy because it failed to notify the insurer, Farmers Alliance Mutual Insurance Company, of a change of occupancy of the insured house as required by the policy's mortgage clause. Perry claims there was no "change" of occupancy although the house became unoccupied. Regardless of whether a change of occupancy occurred, we conclude that leaving the house vacant or unoccupied for more than 120 days constituted an increase of hazard as that term is used in the policy. Because the bank had knowledge of this vacancy and unoccupancy, it was required to notify the insurer, and its failure to do so prohibits the bank's recovery under the policy. Therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carol and Donna Sharp owned a house in Monroe County, Missouri, subject to a mortgage held by Perry State Bank. The Sharps purchased a homeowner's insurance policy from Farmers Alliance Mutual Insurance Company containing a mortgage clause naming Perry State Bank as mortgagee. That mortgage clause stated in relevant part:

> Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee). . . .

> Provided also, that the mortgagee (or trustee) shall notify this company of *any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee* (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee

(or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; *otherwise this policy shall be null and void.*

(emphasis added). The policy was in force at all times pertinent to this action. It had been renewed annually since June 1, 1988, and was renewed again on or about June 1, 1992, to run for another year.

The Sharps moved out of their house sometime in early 1992. The Sharps' son and his fiance then moved into the house and lived there until January 11, 1993, when they moved out and left the house unoccupied. The stipulated evidence indicates that employees of Perry State Bank knew that the Sharps moved out of their house before January 1993 and that the Sharps' son and his fiance had moved out of the house in January 1993. The bank arranged for the electric company to energize the property on January 20, 1993, and showed the house to prospective buyers twice between January 1993 and May 1993. The house was empty except for a floor lamp and a stove or refrigerator.

On May 24, 1993, the house was totally destroyed by fire. Farmers Alliance denied coverage on the ground that Perry State Bank had failed to notify Farmers Alliance that there had been a change of occupancy as required by the mortgage clause. Perry State Bank filed suit against Farmers Alliance to collect under the homeowner's insurance policy. The trial court, the Honorable Channing Blaeuer presiding, entered judgment against Perry State Bank. He reasoned that the mortgage clause in the insurance policy required Perry State Bank, as mortgagee, to notify Farmers Alliance of any change of occupancy or increase of hazard that came to its knowledge, that the bank's employees knew that the house was unoccupied no later than January 20, 1993, that unoccupancy is a "change of occupancy," and that an unoccupied house is a greater risk than an occupied house. Therefore, he concluded, the bank's failure to notify Farmers Alliance of the change of occupancy violated the terms of the policy, rendering the bank unable to recover under the terms of the policy. This appeal followed.

## II. STANDARD OF REVIEW

 This Court's review is governed by Rule 73.01(c)(1) and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Glass v. Missouri Property Ins. Placement Facility,* 912 S.W.2d 653, 656 (Mo.App.1995). Because the parties have stipulated to the facts, the only question before the Court is whether the trial court drew the proper legal conclusion from the facts. *Schroeder v. Horack,* 592 S.W.2d 742, 744 (Mo. banc 1979); *Glass,* 912 S.W.2d at 656. Whether an insurance policy is ambiguous or unambiguous is a question of law. *Killian v. Tharp,* 919 S.W.2d 19, 21 (Mo.App.1996); *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo.App.1993). The policy should be construed as a whole. *Shaffner v. Farmers Mut. Fire Ins. Co.,* 859 S.W.2d 902, 906 (Mo.App.1993). If the policy language is clear and unambiguous, then the court must construe it as written. *Madison Block Pharmacy, Inc. v. United States Fidelity & Guaranty Co.,* 620 S.W.2d 343, 346 (Mo. banc 1981); *Shaffner,* 859 S.W.2d at 906. But if the policy language is unclear or ambiguous, then it must be construed against the insurer. *Madison Block Pharmacy,* 620 S.W.2d at 346; *Killian,* 919 S.W.2d at 21; *Shaffner,* 859 S.W.2d at 906–07.

## III. THE TRIAL COURT DID NOT ERR IN RULING THAT PERRY STATE BANK WAS PROHIBITED FROM RECOVERING UNDER THE POLICY

On appeal, Perry State Bank admits that the house was unoccupied after the Sharps' son and his fiance moved out on January 11, 1993. It contends, however, that the trial court erred when it concluded that leaving the house unoccupied qualified as a "change of occupancy." The bank argues that a "change of occupancy," of which it was required to notify Farmers Alliance, would have occurred only if a new occupant lived in the house after the Sharps' son and his fiance. Therefore, it asserts, it had no duty to notify Farmers Alliance when the Sharps' son moved out. Perry State Bank further claims that the phrase "change of occupancy" is ambiguous and susceptible to other mean-

ings, and therefore it must be construed against Farmers Alliance. In response, Farmers Alliance asserts that the plain, unambiguous meaning of the policy language supports the circuit court's judgment.

While the phrase "change of occupancy" is not defined in the policy, Missouri courts have defined the term "occupancy" as referring to human habitation and to the "use of property as a customary and usual place of habitation to which return is contemplated after temporary absence." *Grannemann v. Columbia Insurance Group*, 931 S.W.2d 502, 505 (Mo.App.1996); *Alcock v. Farmers Mutual Fire Insurance Co.*, 591 S.W.2d 126, 128 (Mo.App.1979). Therefore, "[a] building is unoccupied when it is no longer a place of abode." *Alcock*, 591 S.W.2d at 128.

In contrast, the term "vacant" means "empty, without inanimate objects, deprived of contents." *Grannemann*, 931 S.W.2d at 505. "[A] vacant building is by definition unoccupied." *Alcock*, 591 S.W.2d at 129. Similar definitions have been applied in other Missouri cases. *See, e.g., Shaffner*, 859 S.W.2d at 906; *Drummond v. Hartford Fire Ins. Co.*, 343 S.W.2d 84, 86–87 (Mo.App. 1960); *Bledsoe v. Farm Bureau Mut. Ins. Co.*, 341 S.W.2d 626, 630–31 (Mo.App.1960); *Florea v. Iowa State Ins. Co.*, 225 Mo.App. 49, 32 S.W.2d 111, 114 (1930); *Cook v. Continental Ins. Co.*, 70 Mo. 610, 614 (1879) ("Occupation of a dwelling house is living in it. A mere supervision over it is not sufficient."). *See also* Allan E. Korpela, Annotation, *What Constitutes "Vacant or Unoccupied" Dwelling Within Exclusionary Provision of Fire Insurance Policy*, 47 A.L.R.3d 398 (1973).

Clearly, if the current occupants move out and new occupants move in, that would constitute a "change of occupancy." However, "change" is generally understood to have a much broader meaning. "Change" is defined as "to make different" or to alter or modify. Webster's Third New International Dictionary 373 (1993). In *Theilen v. Theilen*, 911 S.W.2d 317 (Mo.App.1995), this Court defined "change" as "a departure from prior known conditions." *Id.* at 319 (defining "change" in the context of a change of circumstances allowing modification of a dissolution decree). This definition does not re-

quire replacement for a change to have taken place; it only requires a difference in status.

Therefore, in order for a "change of occupancy" to occur, the house's use as a place of habitation or as a dwelling must be different from its prior use in that regard. When the Sharps' son moved out, this changed the house's use as a place of habitation because it was no longer being used as a dwelling. In fact, the Sharps' house appears to have not simply been "unoccupied;" it was "vacant." The parties stipulated that inspection of the burned remains revealed that the only items left in the house were a lamp and either a refrigerator or a stove. The house contained "no items of clothing, no books, photographs, or other personal items." This interpretation is buttressed further by the policy's language in the mortgage clause which requires notice of "*any* change of . . . occupancy." (emphasis added). When the occupying resident moves out, this is a change in the nature of the occupancy. We think that the phrase "change of occupancy" thus can include a change from being occupied to being unoccupied.

Perry State Bank argues that even if the phrase "change in occupancy" can be interpreted to include unoccupancy, it could also be interpreted to mean only a situation in which new persons occupied the building. The bank claims the phrase is thus ambiguous, it did not think it had to report the fact that the building was vacant, and the ambiguity must be construed against the insurer. The mortgage phrase in question is a standard mortgage clause. While an unsophisticated consumer might be able to claim confusion in reading this clause, Perry State Bank fails to persuade us that a commercial entity such as a bank could reasonably have believed that this clause was not intended to require notice where the building became unoccupied or vacant. We need not finally resolve this question, however, for, like the trial judge, we believe that it is incontrovertible that the bank had knowledge of an increase of hazard.

The bank says that a factual question exists as to whether vacancy or unoccupancy constitutes an increase in hazard under the

policy. It also argues that in construing the phrase "increase of hazard" we cannot consider use of the terms "vacancy" and "occupancy" elsewhere in the policy because these other uses of the terms are in sections of the policy dealing with limitations on coverage provided to the homeowner, not the mortgagee. While the latter is true, we nonetheless presume that where the same words are used in different clauses of the same insurance contract, they are intended to be used in the same sense. *Shaffner,* 859 S.W.2d at 907; *Maupin v. Southern Surety Co.,* 205 Mo.App. 81, 86, 220 S.W. 20, 21 (1920). This rule applies here.

The section describing coverage of the policy provides that:

> This policy covers unscheduled personal property usual or incidental to the *occupancy* of the premises as a dwelling and owned or used by the insured, while on the described premises and, at the option of the Named Insured, owned by others while on the portion of the premises *occupied* exclusively by the insured.

(emphasis added). This provision uses variations of the term "occupancy" to emphasize the importance of human habitation in the insured property. The policy also specifically permits a limited period of unoccupancy, and an even more limited period of vacancy, without affecting coverage, stating:

> Permission granted for the dwelling covered ... to remain *vacant* for not more than 60 consecutive days or *unoccupied* for not more than 120 consecutive days except as otherwise limited....

(emphasis added). A section setting out exclusions from coverage of the property owner suspends or restricts coverage for loss occurring:

> (a) While the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for *occupancy* by owner or tenant, is *vacant* or *unoccupied*

beyond a period of 60 consecutive days.... [1]

(emphasis added).

"The purpose of an occupancy clause is to avoid liability where the risk has been increased by vacancy." 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 94:102 (3d ed.1996). The rationale behind this is that "it is common knowledge that in many areas a building vacated by a tenant, and left unoccupied, is subject to increased hazards of fire." *Id.* § 94:105. The above sections deny coverage in the event of vacancy beyond 60 days or unoccupancy beyond 60 to 120 days because of this increase of risk of loss to the property. *See also Home Ins. Co. v. Hardin,* 162 Miss. 254, 139 So. 603, 603 (1932) (considering it common knowledge that the hazard of fire is much greater in dwelling houses that are vacant and unoccupied than in houses that are occupied).

■ Here, it is conceded the property was unoccupied for over 120 days. This was the time limit beyond which the policy made clear the insurer would find the hazard too great to permit continued coverage. The bank could not reasonably have believed that, although the risk was so great that the insured would be denied coverage, it had no duty to inform the insurer when the building was unoccupied for this period. Under the definitions in the policy itself, considered as a whole, such vacancy unambiguously increased the hazard.[2]

This construction of the contract is consistent with the purpose of the mortgage clause. As Perry State Bank concedes, the purpose of the notice requirement is to allow the insurer to reassess its risk and charge a higher premium if it determines there is a higher risk of loss. *See South Carolina Ins. Co. v. White,* 301 S.C. 133, 390 S.E.2d 471, 475 (App.1990). The parties here all agree that the policy voids coverage if this notice is not given. Thus, the bank knew the effect of failing to report the increased hazard. The

---

1. There is no explanation why this section seems to preclude unoccupancy of over 60 days while the permission clause permits unoccupancy of up to 120 days.

2. We do not hold that an unoccupancy of less than 120 days or vacancy of less than 60 days is unambiguously an increase in hazard under this policy.

trial court did not err in granting summary judgment to the insurer.

For the reasons stated above, we affirm.

All concur.