**Thomas E. TRAVERS and Bob F. Mallory d/b/a Annuity Brokerage Co., Appellant,**

v.

**UNIVERSAL FIRE & CASUALTY INSURANCE CO.,**
**Respondent.**

**No. WD 57477.**

Missouri Court of Appeals,
Western District.

Nov. 7, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

Patrick M. Reidy, Kansas City, for appellant.

David P. Bub, St. Louis, for respondent.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Thomas E. Travers and Bob F. Mallory, d/b/a Annuity Brokerage Co. (Annuity Brokerage), appeal the trial court's order granting summary judgment in favor of Universal Fire & Casualty Insurance Co. (Universal) on Annuity Brokerage's claim that Universal breached its fire insurance contract. Annuity Brokerage claims the court erred in granting Universal's motion because, as a matter of law, Annuity Brokerage's foreclosure and subsequent purchase of the insured property did not constitute a change in ownership, occupancy, or risk requiring that Annuity Brokerage give notice to Universal. Annuity Brokerage also argues that genuine issues of material fact exist that preclude summary judgment. Because this court finds that genuine issues of material fact remain regarding whether a change in occupancy or a substantial change in risk occurred requiring notice to Universal and whether Annuity failed to give such notice within a reasonable amount of time, the judgment of the trial court is reversed, and the cause is remanded.

**Factual and Procedural Background**

On appeal from a summary judgment, this court reviews the facts, and any reasonable inferences therefrom, in the light most favorable to the party against whom summary judgment was entered. *Bryan v. Missouri State Highway Patrol*, 963 S.W.2d 403, 406 (Mo.App.1998). Annuity Brokerage, a business that buys discounted mortgages, held a mortgage on Bruce and Dorothy Gilmore's home. Annuity Brokerage required the Gilmores to insure their property, so the Gilmores obtained insurance from Universal. Universal's policy provided $40,000 coverage for the Gilmores' home. On the policy, the Gilmores were listed as the named insureds, and Annuity Brokerage was listed as mortgagee.

In January 1997, the Gilmores failed to pay the annual insurance premium to Universal, so Annuity Brokerage paid the premium to ensure that the property was covered by insurance. Later that year, after the Gilmores became several months

behind in their mortgage payments, Annuity Brokerage decided to foreclose on the Gilmores' property. On June 10, 1997, a foreclosure sale was held. Annuity Brokerage purchased the Gilmores' property for the exact amount of the Gilmores' outstanding debt on their mortgage. Annuity Brokerage did not notify Universal of the foreclosure sale, nor did Annuity Brokerage notify Universal that it had purchased the Gilmores' property at the sale.

Two days after the foreclosure sale, Mr. Travers posted a 30 day notice to vacate on the front door of the Gilmores' former house. Although no one came to the door, Mr. Travers noticed that the Gilmores appeared to continue to occupy the house, as he saw furniture inside the house and children's toys in the front yard. Approximately ten days later, on June 23, 1997, Mr. Travers went back to the house and posted a second notice to vacate. The first notice to vacate had been removed from the door. Again, no one came to the door. Mr. Travers did not notice any difference in the house between his posting of the first notice to vacate and the second notice to vacate.

Mr. Travers went back to the house a third time on July 16, 1997. Because the front door was unlocked, Mr. Travers entered the house and walked through it. The house contained some clothes, household goods, and furniture, including beds. At that time, Mr. Travers did not know whether the Gilmores had abandoned those items, or whether the Gilmores were in the process of moving out of the house. A week later, on July 25, 1997, Mr. Travers and one of his employees returned to clean out the house. Mr. Travers found "fairly nice clothing" and coffee tables in the house. The garage door was broken, as if someone had driven through it. One of the windows in the house was also broken. Before they left the house that day, Mr. Travers and his employee changed the locks on the doors and nailed plywood over the broken window.

On July 29, 1997, shortly after Mr. Travers had cleaned out the house, it was totally destroyed by a fire. Annuity Brokerage made demand upon Universal for payment of the $40,000 in insurance proceeds. Universal advised Annuity Brokerage that it was denying coverage, however, based upon Annuity Brokerage's failure to notify Universal of a change in ownership and a substantial change in risk in a timely fashion. Although Universal gave this specific reason for denying coverage, Universal also advised Annuity Brokerage that it was not waiving all other rights and defenses that it might have under the policy and Missouri law.

After Universal denied coverage, Annuity Brokerage filed a petition on the fire insurance contract against Universal. In the petition, Annuity Brokerage alleged that Universal had breached its policy of insurance by refusing to pay Annuity Brokerage the proceeds, and that Universal's refusal to pay was vexatious under § 375.420, RSMo 1994.[1] Annuity Brokerage requested damages in the amount of $40,000, plus the statutory penalty provided for in § 375.420, RSMo 1994, and attorney's fees and costs.

Universal filed an answer in which it denied all liability under the policy, and asserted its affirmative defense that Annuity Brokerage's failure to notify Universal

---

1. Section 375.420, RSMo 1994, provides:
 In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

of the change in ownership and substantial change in risk in a timely manner precluded coverage. Both parties then filed motions for summary judgment. Annuity Brokerage requested partial summary judgment on the issues of liability and damages, leaving only the issue of Universal's alleged vexatious refusal to pay to be tried. Universal requested summary judgment on all of the issues. After hearing arguments on both parties' motions, the court denied Annuity Brokerage's motion and granted Universal's motion for summary judgment. Annuity Brokerage appealed the court's granting summary judgment in favor of Universal.

## Standard of Review

■ Appellate review of a summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those which a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* The moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378.

Universal was a defending party in this action. For a movant who is a defending party in a lawsuit, the prima facie showing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment as a matter of law by showing:

(1) facts that negate *any one* of the claimant's elements facts, (2) ·that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

When the movant has satisfied one of the three grounds for establishing a right to judgment, the non-movant is then required to respond by setting forth specific facts which show that there is a genuine issue of material fact. *Id.* Once a movant makes a prima facie showing, " 'an adverse party may not rest upon the mere allegations or denials of his pleading' " to contradict facts alleged by the movant. *Id.* (quoting Rule 74.04(e)).

## Annuity Brokerage's Insurable Interest Survived Foreclosure

■ Annuity Brokerage first claims that the trial court erred in granting summary judgment because Universal failed to establish as a matter of law that Annuity Brokerage was not covered under the Gilmores' insurance policy. Universal responds that it presented undisputed evidence that negated one of the elements essential to Annuity Brokerage's claim to coverage the existence of an insurable interest under the policy. Universal claims that upon Annuity Brokerage's foreclosure and subsequent purchase of the Gilmores' property for the full amount of the mortgage debt, Annuity Brokerage lost its insurable interest as mortgagee under the Gilmores' insurance policy and, therefore, was no longer covered by the policy at the time of the fire.

■ To recover under a fire insurance policy, a claimant must establish (1) that the insurance company issued its policy to the claimant on the property covering loss due fire; (2) that such property was damaged by fire; and (3) that the policy was in force on the date of the fire. MAI 31.09 [1978 New]; *Gorman v. Farm Bureau Town & Country Ins. Co. of Missouri*, 977 S.W.2d 519, 522 (Mo.App.1998). Additionally, "a prerequisite to the enforcement of

an insurance contract" is that "the insured have an insurable interest in property both at the time of making the contract and at the time of loss." *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 704 (Mo. banc 1984). A party has an insurable interest in property if the party "will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction ... by the happening of the event insured against." *Id.* at 705.

■ Prior to Annuity Brokerage's foreclosure on the Gilmores' property, the Gilmores had an insurable interest in the property as owners, and Annuity Brokerage had an insurable interest in the property as mortgagees. After Annuity Brokerage foreclosed on the Gilmores' property and purchased it, however, the Gilmores' insurable interest terminated. *Economy Preferred Ins. v. Schomaker*, 900 S.W.2d 249, 252 (Mo.App.1995).[2] Annuity Brokerage's status changed from mortgagee to owner. *Id.*

Annuity Brokerage claims that the mortgage clause contained in the Gilmores' homeowners' policy protected its insurable interest regardless of Annuity Brokerage's change in status from mortgagee to property owner. The mortgage clause in the Gilmores' homeowners' policy provided:

12. Mortgage Clause. The word "mortgagee" includes trustee."

If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium;

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us, Loss Settlement and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

■ This mortgage clause is a "standard" or "union" mortgage clause.[3] *See Prudential Ins. Co. of America v. German*

---

**2.** Although the Gilmores were no longer the owners of the insured property, they would still have had an insurable interest in the property if they had continued to remain liable for indebtedness on the property after the foreclosure sale. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 706 (Mo. banc 1984). Since the parties stipulated that the purchase price Annuity Brokerage paid for the property at the foreclosure sale was identical to the amount of the Gilmores' outstanding debt, this court will assume that the Gilmores were no longer liable for any indebtedness on the property and, therefore, no longer had an insurable interest in the property.

**3.** This court will refer to it as a "union mortgage clause."

*Mut. Fire Ins. Ass'n of Lohman,* 231 Mo. App. 699, 105 S.W.2d 1001, 1005 (1937). "[T]he union mortgage clause operates as an independent contract of insurance between the mortgagee and the [insurance] company." *Id.* Because the union mortgage clause is an independent contract between the mortgagee and the insurance company, the mortgagee is protected "against loss from any act or neglect of the mortgagor or owner, so that it shall not defeat the insurance so far as the interest of the mortgagee is concerned." 4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 65:8 (1996). That is why the union mortgage clause in this case provides that if Universal denies the Gilmores' claim, "that denial shall not apply to a valid claim of the mortgagee."

In addition to allowing the mortgagee's coverage to survive when the mortgagor's coverage has been denied, the union mortgage clause also allows the mortgagee's insurable interest to survive foreclosure when the mortgagee purchases the property at the foreclosure sale. In *Prudential,* this court held that a mortgagee, who had foreclosed on and purchased the mortgagor's property, was entitled to recover the insurance proceeds after the property was destroyed by fire. 105 S.W.2d at 1004–05. This court reasoned that the union mortgage clause protected the mortgagee "in whatever interest it had at the time of any loss," even though it was no longer the mortgagee:

> A mere change in the character of interest from that of mortgagee to that of owner is not sufficient to defeat the insurance granted the mortgagee, for it must be considered that such a change or the possibility thereof was within the contemplation of the parties when the contract was made.

*Id.*

Despite this court's finding in *Prudential* that the mortgagee's purchase of the insured property at foreclosure enlarges the mortgagee's insurable interest under the union mortgage clause, Universal argues that Annuity Brokerage's purchasing the property for the full amount of the mortgage debt actually extinguished its insurable interest under the union mortgage clause. Universal relies on the case of *Economy Preferred,* 900 S.W.2d 249, to support this contention. In *Economy Preferred,* the Eastern District of this court denied a mortgagee coverage under a union mortgage clause after the mortgagee purchased the property for the full amount of the mortgage debt. *Id.* at 252. The court found that "[t]he existence of a 'union' mortgage clause does not preserve coverage on a policy that is terminated because the entire debt has been extinguished." *Id.*

In denying the mortgagee-turned-owner coverage under the union mortgage clause, the court in *Economy Preferred* relied on another Eastern District case, *Northwestern Nat. Ins. Co. v. Mildenberger,* 359 S.W.2d 380 (Mo.App.1962). In *Northwestern,* the court found that the creditor-debtor relationship "serves as the supporting pillar for the whole structure so far as the mortgagee is concerned." *Id.* at 386. This is so because the "true purpose" of the union mortgage clause is to ensure that the mortgage debt is repaid. *Id.* at 385. Once the mortgage debt has been paid in full and the creditor-debtor relationship is terminated, "the reason for any claim on the part of the mortgagee on the insurance proceeds likewise evaporates." *Id.* at 386. It is inconsequential that the mortgagee, as opposed to someone else, paid the indebtedness. *Id.* According to the court in *Northwestern,* if the entire mortgage debt is extinguished, the mortgagee's insurable interest under the standard mortgage clause is also extinguished. *Id.* The Southern District cited this concept and relied on both *Economy Preferred* and *Northwestern* in denying the mortgagee's claim to the insurance proceeds after the mortgagee had purchased the insured property for the exact amount of the indebtedness in *Fire Ins. Exchange*

*v. Bowers,* 994 S.W.2d 110, 113–114 (Mo. App.1999).

The view that the mortgagee's payment of the mortgage debt in full extinguishes the mortgagee's insurable interest is also espoused in 4 COUCH, *supra* at § 65:36, and 5A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 3403 (1970). According to these treatises, the only time the mortgagee retains an insurable interest is when it purchases the property for less than the amount of the mortgage debt:

> The insurable interest of the mortgagee in property extends only to the amount of the mortgage debt, and where a mortgage has been paid and the debt satisfied, whether before or after fire or other loss, the mortgagee suffers no loss and no longer has an insurable interest in the property. Stated otherwise, if the mortgage debt is fully or partially extinguished prior to settlement of the loss, the mortgagee's interest is accordingly lowered and if it has no interest in the property, it can recover nothing despite its independent contract with the insurer.

4 COUCH, *supra* at § 65:36 (citations omitted). *See also* 5A APPLEMAN, *supra* at § 3403 (stating that "the full or partial extinguishment of the mortgage debt itself, whether prior to or subsequent to the loss, will preclude, to the extent thereof, any recovery on the policy by the mortgagee.").

Thus, the principles found in *Economy Preferred, Northwestern,* and *Bowers* have support in insurance law treatises. Nevertheless, this court's holding in *Prudential* that the mortgagee's purchase of the property at the foreclosure sale enlarges, rather than extinguishes, the mortgagee's insurable interest was cited with approval in the Supreme Court case of *Reliance Ins. Co. of Pa. v. Community Federal Sav. & Loan Ass'n,* 440 S.W.2d 929, 930–31 (Mo.1969). Although the Court in *Reliance* was interpreting the effect of foreclosure on an errors and omissions policy, and not on a union mortgage clause, the

Court held that the principles set forth in *Prudential* were analogous. *Id.* Specifically, the Court cited with approval the concept in *Prudential* that the inclusion of the union mortgage clause in a homeowners' policy indicates that the parties must have contemplated that the mortgagee might foreclose on the property, and that the foreclosure might enlarge the mortgagee's interest from that of mortgagee to owner if the mortgagee were to purchase the property. *Id.*

The Court in *Reliance* distinguished the effect of foreclosure on a union mortgage clause versus an open mortgage clause on the basis that a union mortgage clause continues to provide the mortgagee coverage when the mortgagee becomes the owner after purchasing the property at foreclosure, while an open mortgage clause does not. *Id.* Moreover, in reiterating *Prudential's* holding that the purpose of the union mortgage clause is to protect the mortgagee "in whatever interest it had at the time of any loss," the Court in *Reliance* did not limit that interest to only the amount of the mortgage debt remaining after foreclosure. *Id.* at 931.

Although *Reliance* was decided after both *Prudential* and *Northwestern,* the Court chose to cite with approval *Prudential's* holding that the union mortgage clause continues to protect the mortgagee's insurable interest after the mortgagee obtains full title to the property at foreclosure, rather than *Northwestern's* holding that the union mortgage clause does not protect a mortgagee's insurable interest if the mortgagee purchases the property at foreclosure for the full amount of the mortgage debt. *Id.* at 930–31. Moreover, this court notes that public policy supports following *Prudential* rather than *Northwestern.* At the time of the loss in this case, Annuity Brokerage had paid the 1997 premium on the Gilmores' policy, insuring the property from February 11, 1997, through February 11, 1998. Thus, Universal had "received a premium for coverage through a day certain and for protection against a

full amount of loss." *Murray County State Bank v. Milwaukee Mut.*, 513 N.W.2d 1, 3 (Minn.App.1994). Under Universal's argument that the mortgagee's purchase of the insured property extinguishes, rather than enlarges, the mortgagee's insurable interest, "no one would have an insurable interest in the conveyed property and [Universal] would therefore reap a windfall profit." *Id.* Therefore, this court finds as a matter of law that the union mortgage clause in this case allowed Annuity Brokerage to retain its insurable interest in the Gilmores' property after it purchased the property at the foreclosure sale for the full amount of the mortgage debt.

**Genuine Issues of Fact Remain Regarding Whether Change of Occupancy or Substantial Change in Risk Occurred and Whether Annuity Brokerage Failed to Give Notice of Such Changes in a Timely Manner**

Even though this court has found that Annuity Brokerage retained an insurable interest after it foreclosed on and purchased the property, Universal could still be entitled to summary judgment if it establishes that Annuity Brokerage's foreclosure and subsequent purchase of the property constituted a change in ownership, occupancy or a substantial change in risk of which Annuity Brokerage failed to notify Universal in a timely manner. This is so because the mortgage clause specifically provides that in order for the mortgagee to have a claim to the insurance proceeds, the mortgagee must notify Universal "of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware." [4]

Annuity Brokerage argues that its foreclosure on and subsequent purchase of the insured property did not constitute a change in ownership triggering the policy's notice requirement. According to 4 COUCH, *supra* at § 65:78, "[a] provision that the mortgagee shall give notice of any change of ownership known to him or her ordinarily applies only to transfers by the mortgagor to third persons." The reason a transfer to the mortgagee does not constitute a change of ownership is because of the principle espoused in *Prudential*, 105 S.W.2d at 1004–05, and cited with approval by the Supreme Court in *Reliance*, 440 S.W.2d at 930–31. This principle provides that at the time the union mortgage clause was made a part of the policy, the parties must have contemplated that the mortgage might be foreclosed upon and the mortgagee's interest in the insured property "might be enlarged by the passage to it upon such foreclosure sale of the full title to the property...." *Prudential*, 105 S.W.2d at 1004–05.

Thus, under the union mortgage clause, "the mortgagee's acquisition of title to the mortgaged premises is an increase in the mortgagee's insurable interest and does not constitute a change in title or ownership of the property." Annotation, *Right of Mortgagee, Who Acquires Title to Mortgaged Premises in Satisfaction of Mortgage, to Recover, Under Fire Insurance Policy Covering Him as "Mortgagee," for Loss or Injury to Property Thereafter Damaged or Destroyed by Fire*, 19 A.L.R.4th 778, 781 (1983) (footnote omitted). *See also Murray County State Bank*, 513 N.W.2d at 3. Therefore, this court finds, as a matter of law, that Annuity Brokerage's purchase of the Gilmores' property at the foreclosure sale did not

---

4. Universal does not allege Annuity Brokerage should be denied coverage for failing to comply with conditions in the policy outside of those contained in the union mortgage clause. A mortgagee claiming under a union mortgage clause "asserts his or her right subject to all the terms and conditions of the contract of insurance, except those which are expressly waived in the mortgage clause;

acts of the mortgagee which are in contravention of conditions and limitations will generally bar the mortgagee's recovery." 4 COUCH, *supra* at § 65:46 (citations omitted). Because Universal limits its denial of coverage to Annuity Brokerage's alleged violation of conditions within the union mortgage clause, however, this court will address only those conditions.

constitute a change in ownership requiring notice to Universal.

 Universal next claims that Annuity Brokerage failed to give timely notice that the property was unoccupied or vacant, and in so doing, violated the requirement that it notify Universal of a change in occupancy. Universal further argues that such unoccupancy or vacancy constituted a substantial change in risk.[5] The definition of occupancy is a question of law. 4 COUCH, *supra* at § 94:109. "Missouri courts have defined the term 'occupancy' as referring to human habitation and to the 'use of property as a customary and usual place of habitation to which return is contemplated after temporary absence.'" *Perry State Bank v. Farmers Alliance Mut. Ins. Co.*, 953 S.W.2d 155, 158 (Mo.App.1997) (quoting *Alcock v. Farmers Mutual Fire Insurance Co.*, 591 S.W.2d 126, 128 (Mo.App.1979)). A building becomes unoccupied "'when it is no longer a place of abode.'" *Id.* The phrase "change in occupancy" "can include a change from being occupied to being unoccupied." *Perry*, 953 S.W.2d at 158.

 While the definition of occupancy is a question of law, whether property is unoccupied and whether such change in occupancy constitutes a substantial change in risk are issues of fact for a jury, unless "the evidence is so conclusive that reasonable minds cannot differ." 4 COUCH, *supra* at § 94:38 (citation omitted). *See* 4 COUCH, *supra* at § 94:108–09. Here, Universal and Annuity Brokerage presented conflicting evidence regarding if and when the house became unoccupied before the fire. Universal argues that the house became unoccupied upon Annuity Brokerage's foreclosure and subsequent purchase of the property, because the Gilmores had no legal right of occupancy after that time. In the alternative, Universal argues that the house was unoccupied on July 16, 1997, because Mr. Travers testified that, when he visited the house on that day, it appeared to him that the Gilmores had abandoned their remaining furniture and household items.

Annuity Brokerage argues that Mr. Travers also testified, however, that he was unsure as to whether the Gilmores had abandoned the items he found in the house on July 16, 1997, or whether the Gilmores were simply in the process of moving out at that time. Additionally, Mr. Travers testified that he found fairly nice clothing and coffee tables in the house as of July 25, 1997, four days before the fire. From this testimony, Annuity Brokerage argues that the evidence is inconclusive as to when, or even if, the property was unoccupied at the time of the fire.

The record contains "two plausible, but contradictory, accounts of the essential facts" regarding when and if the property became unoccupied. *ITT*, 854 S.W.2d at 382. As a result, genuine issues of material fact remain regarding if and when a change of occupancy occurred and, if so, if and when a substantial change of risk because of such change of occupancy occurred.

 Moreover, if it is found that a change of occupancy or a substantial change of risk occurred, another factual issue remains regarding how much time Annuity Brokerage had to notify Universal of such changes. Generally, when a policy does not specify a time period within which the insured is to give notice to the insurer, notice is to be given within a reasonable time. *See* 4 COUCH, *supra* at § 65:77; *Independent Fire Ins. v. NCNB Nat. Bank*, 517 So.2d 59, 65 (Fla.App. 1 Dist.1987). As the parties dispute what constitutes a reasonable time period, a genuine issue of material fact also remains on this issue.

5. In making its argument that the change in occupancy created a substantial change in risk, Universal relies on *Perry State Bank v. Farmers Alliance Mut. Ins. Co.*, 953 S.W.2d 155, 159 (Mo.App.1997). In *Perry*, this court found that a factor in determining whether a substantial change in risk occurred is the length of time the property was unoccupied or vacant. *Id.*

The existence of these genuine issues of material fact preclude summary judgment. *ITT*, 854 S.W.2d at 382. Therefore, the judgment of the trial court is reversed, and the cause is remanded to the trial court to determine if and when a change in occupancy or a substantial change in risk occurred, and whether Annuity Brokerage failed to notify Universal of these changes in a reasonable amount of time.

All concur.